(58 Misc. Rep. 264.)

PEOPLE ex rel. HAUSAUER–JONES PRINTING CO. v. ZIMMERMAN, Comptroller.

(Supreme Court, Special Term, Erie County.   March 13, 1908.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—EIGHT-HOUR LAW.
    Laws 1897, p. 462, c. 415, § 3, re-enacted by Laws 1906, p. 1394, c. 506, providing that each contract to which a municipal corporation is a party which involves the employment of laborers shall contain a stipulation that no laborer shall be required or permitted to work more than eight hours per day, and declaring that no contractor violating the provisions shall receive payment under the contract, etc., imposes good faith and diligence on the contractor, and requires him to see that the directions and purposes of the act are carried out, but it does not make him guarantee against every possible accidental and unintentional violation of the provisions.

2. SAME.
    A corporation had a contract with a city for public printing. Its manager, after the contract had been made, called on the superintendent of the establishment, read to him the law fixing eight hours as the maximum time for employés to work per day, and gave him imperative directions that under no circumstances should the act be violated. The superintendent stated in his affidavit that the law was not violated, and that no employé had ever been permitted or required to work more than eight hours per day on any of the public work. An employé stated in his affidavit that on some occasions he worked more than eight hours per day on city printing and was paid for such work, but he did not specify the days he so worked, or by whose direction he worked. Held insufficient to defeat the contractor's right to compensation under Laws 1897, p. 462, c. 415, § 3, re-enacted by Laws 1906, p. 1394, c. 506.

3. SAME.
    A city availing itself of the benefit of a contract with a contractor by accepting the work done under it after knowledge of the violation by the contractor of Laws 1897, p. 462, c. 415, § 3, re-enacted by Laws 1906, p. 1394, c. 506, cannot refuse to pay the contractor pursuant to the contract.

4. SAME.
    A contract for public printing for a city expired December 31, 1907. Thereafter the various departments of the city ordered the contractor to furnish printing supplies, and the contractor did so. There was no new written contract between the city and the contractor. Held, that any violation of Laws 1897, p. 462, c. 415, § 3, as re-enacted by Laws 1906, p. 1394, c. 506, fixing the hours of labor on municipal contracts, etc., could not work a forfeiture of the compensation to be paid for the work done after the expiration of the contract.

5. SAME.
    Laws 1897, p. 462, c. 415, § 30, re-enacted by Laws 1906, p. 1394, c. 506, providing that the wages to be paid for a legal day's work to all classes of laborers on all public works, etc., shall not be less than the prevailing rate for a day's work in the same trade in the locality within the state

where such public work is performed, etc., does not require a contractor with a municipal corporation to employ exclusively journeymen workmen, and the statute is complied with where the contractor pays the prevailing rate for the particular class of labor actually employed.

6. CONSTITUTIONAL LAW—RIGHT TO CONTRACT—HOURS OF LABOR.

Laws 1897, p. 462, c. 415, § 3, re-enacted by Laws 1906, p. 1394, c. 506, providing that eight hours shall constitute a legal day's work on public works, etc., and declaring that the act shall not prevent an agreement for overwork at an increased compensation except upon work by or for the state or a municipal corporation, etc., is confined to work done for the state and municipal corporations, and if construed to limit the right of a person to sell his services for other work, where he has also engaged on public works, is unconstitutional, and a contractor furnishing the public printing for a municipal corporation may permit his employés to work overtime on jobs taken from private customers and in no way connected with the public work.

Mandamus by the people, on the relation of the Hausauer-Jones Printing Company, against George M. Zimmerman, as comptroller of the city of Buffalo. Heard on motion for a peremptory writ. Granted.

U. S. Thomas, for relator.

William B. Frye, for defendant.

WHEELER, J. The relator asks for a peremptory writ of mandamus requiring the defendant to deliver to the relator all warrants in his possession, payable to the order of the relator, issued and made out for public printing furnished by the relator to the city of Buffalo pursuant to a contract for printing made between the city of Buffalo and the relator, whereby the relator undertook and agreed to do certain printing required by the various departments of the city for the year ending December 31, 1907. The granting of the writ is resisted on the sole alleged grounds that the relator has violated its contract and the provisions of section 3 of chapter 415, page 462, of the Laws of 1897, as re-enacted by chapter 506, page 1394, of the Laws of 1906, which was incorporated into the contract and reads as follows:

"Sec. 3. Hours to Constitute a Day's Work.—Eight hours shall constitute a legal day's work for all classes of employees in this state except those engaged in farm and domestic service unless otherwise provided by law. This section does not prevent an agreement for overwork at an increased compensation except upon work by or for the state or a municipal corporation, or by contractors or subcontractors therewith. Each contract to which the state or a municipal corporation is a party which may involve the employment of laborers, workmen or mechanics shall contain a stipulation that no laborer, workman or mechanic in the employ of the contractor, subcontractor or other person doing or contracting to do the whole or a part of the work contemplated by the contract shall be permitted or required to work more than eight hours in any one calendar day except in cases of extraordinary emergency caused by fire, flood or danger to life or property. The wages to be paid for a legal day's work as hereinbefore defined to all classes of such laborers, workmen or mechanics upon all such public works, or upon any material to be used upon or in connection therewith shall not be less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work on, about or in connection with which such labor is performed in its final or completed form is to be situated, erected or used. Each such contract hereafter made shall contain a stipulation that each such laborer, workman or mechanic, employed by such contractor, subcontractor or other person on, about or upon such public work, shall receive such wages herein provided for. Each contract for such public work here-

after made shall contain a provision that the same shall be void and of no effect unless the person or corporation making or performing the same shall comply with the provisions of this section; and no such person or corporation shall be entitled to receive any sum nor shall any officer, agent or employee of the state or of a municipal corporation pay the same or authorize its payments from the funds under his charge or control to any such person or corporation for work done upon any contract, which in its form or manner of performance violates the provisions of this section, but nothing in this section shall be construed to apply to persons regularly employed in state institutions, or to engineers, electricians and elevator men in the department of public buildings during the annual session of the Legislature, nor to the construction, maintenance and repair of highways outside the limits of cities and villages."

On January 8, 1908, one William Drumb, a former employé of the relator, made an affidavit in substance alleging that some time prior to January 1, 1908, while employed by the relator, he had worked more than eight hours on work covered by the contract, and that some four others of the relator's employés had done the same. He also stated in the affidavit that the relator did not pay him or the other persons mentioned the prevailing rate of wages. Thereupon the president of the local Typographical Union served on the mayor and comptroller of the city of Buffalo a notice to the effect that the relator had violated its contract and the provisions of the statute in question, and forbidding the city and its officials to make any further payments on account of the contract to the relator. The city officials, therefore, refused to make further payments, and the relator thereupon began this proceeding, claiming and alleging in these numerous affidavits and moving papers that it had in no way violated the statute or the contract, referring to the affidavit of Drumb, and explaining what had and had not been done in reference to the matters in dispute.

At the very outset the court is called upon to construe the provisions of the act in question as to what it prevents and attempts to secure. It cannot have been the purpose or intent of the act to make a contractor responsible for every accidental violation of the statute as to hours or wages. We do not understand it was the purpose of the Legislature to impose the severe penalty of forfeiture of contract and compensation for every possible case where an employé works more than eight hours on a public job. To give the statute such a construction would put a contractor at the mercy of evil and designing men, and make him the victim of mere accident or honest mistake. It is not to be supposed, in case a workman by accident or oversight labored beyond the prescribed eight hours, that thereby his employer violated his contract and forfeited all right to compensation for work done under it. Accidental or unintentional laboring overtime for 10 minutes would (if such a construction were to prevail) be quite as effectual to work a forfeiture as the intentional and habitual violation of the terms of the statute. We think the statute rather imposes upon contractors the duty not only for themselves not to violate the provisions of the act, but to use every reasonable effort and diligence to cause those acting for and representing them to also observe the law in the respects required. If, notwithstanding the express instructions and directions of contractors, and against their wishes, an employé labors more than the prescribed eight hours per day, it cannot be said that

the contractor required or permitted it to be done. On the contrary, under such circumstances what was done would be done, not by his sufferance and permission, but contrary to and without his sufferance and permission. To hold that under such circumstances a contractor forfeited all rights under his contract or to compensation earned for work done would outrage every sense of justice. Such cannot have been the purpose or intent of either the Constitution or of the legislative statute passed in pursuance of it. The statute imposes good faith and diligence on the contractor to see the directions and purposes of the act are carried out. It does not make the contractor guarantee against every possible accidental and unintentional violation.

We believe this view of the law disposes of this case. It appears from the affidavits in the case that Mr. Hausauer, the head of the corporation, the relator in this case, after the contract for the public printing had been entered into, called on the superintendent of his establishment, read to him the act in question, and gave him explicit and imperative directions that under no circumstances should the provisions of the act be violated. Mr. Weber, the superintendent, makes affidavit not only to these facts, but also swears they never were in fact violated, and that no employé has ever been permitted or required to work more than eight hours on any of the public work in hand, and that the prevailing and more than the prevailing rate of wage has been uniformly paid those employed on that class of work. Mr. Drumb, it is true, in his affidavit states than on some occasions or days he did in fact work more than eight hours on city printing, and was paid for such work. He does not specify on what days he so worked, or by whose direction he so worked, and he does not in his affidavit state that any member of the relator's corporation or its superintendent knew or was aware of his working overtime on city work. There is nothing in the opposing affidavits bringing any such knowledge home to the relator, or showing, if overwork was done, it was done with its assent or permission. I am satisfied that Mr. Drumb is mistaken in his assertion. It does appear by the relator's affidavits that many of their compositors and other workmen did in fact work nine hours a day and were paid for their extra work, but that such extra work as was done was never done upon city printing, that no workman was permitted to do more than eight hours per day on city work, and that such overtime as was done by its employés was done upon work of their private customers; that blank time slips or tally sheets were furnished each employé, so that the time spent on city work might be kept and credited separate and distinct from that performed for other patrons of relator's firm. It may well be that Mr. Drumb confused the two classes of work, and has fallen into an honest mistake in making the statements contained in his affidavit. We are convinced such must have been the case, because in his affidavit Drumb named four other persons in the employ of the relator as persons who had also worked more than eight hours on the city work. The relator produces on this hearing the affidavit of each of these four persons specifically denying that they ever worked more than eight hours on the work covered by the relator's contract with the city. It demonstrates quite clearly that Drumb's statements and conclusions are not to be

relied on, and that he must be mistaken. It is not material, however, in view of the interpretation we place upon the statute, to determine whether Mr. Drumb is mistaken or not. For the purposes of the disposition of this matter we may concede that Mr. Drumb is absolutely correct in every statement made in his affidavit, and yet there still remains an absence of any proof on the part of the respondent showing that the relator knew or had reason to know he was working overtime on city work, or that it in any way countenanced such a thing or suffered it to have been done. The case thus presented becomes one of law only, and upon the undisputed facts the relator is entitled to the writ of mandamus asked.

The affidavits present another situation which demands the attention of the court. It appears that on the 7th day of January, 1908, Mr. Drumb made his affidavit stating that he had worked nine hours a day on city work, and on that day his affidavit, with a written notice from the president of the Typographical Union, was served on the mayor, city comptroller, and city treasurer, and other city officials, notifying them of the alleged violation by the relator of the statute in question. From that date, therefore, the city of Buffalo had notice of the alleged violation of the contract and statute. Nevertheless the city continued to receive the reports of the commissioner of public works on which particular work it is claimed overtime was done. In other words, after notice of the alleged violation the city continued to avail itself of the contract with the relator and to accept work done under it. It would seem, therefore, the city by its own conduct must be held to be estopped from now questioning the validity of the contract, and has waived any right to insist on a forfeiture of the relator's rights thereunder. This was held to be the rule governing such case by Justice Ingram at the Appellate Division in the cases of People ex rel. Rodgers v. Coler, 56 App. Div. 98, 67 N. Y. Supp. 701. The learned justice in that case held that a municipality having knowledge of the violation of the provisions of the labor law was bound to take some action to avoid the contract, and that it could not stand idly by and continue to accept its benefits and then refuse to draw its warrants on the ground that the provision of the statute had been violated. This at least would seem to be natural justice.

There remains still another ground for the consideration of the court. The written contract by which the city public printing was done was made on the 19th day of February, 1907, and by its very terms only covered the public printing required by the city of Buffalo for the year ending December 31, 1907. Notwithstanding the fact that the contract in question by its terms simply covered work ordered before January 1, 1908, the various departments of the city have continued to order since January 1, 1908, such further printing supplies as they have required, and this work has been done and performed by the relator without any new written agreement with the city. It must go without argument that all new work done since January 1, 1908, was not done under and by virtue of the old written agreement expiring December 31, 1907, but under an implied contract to pay for the work done arising and created by each separate order given by the city. Consequently any violation

of the statute as to hours or wages for work done under the contract expiring December 31st could not possibly affect contracts subsequently made, or work a forfeiture of the compensation to be paid for such new work. As Mr. Drumb's affidavit related solely to work claimed to have been done by him prior to January 1, 1908, it follows that for all work done and supplies furnished by the relators not provided for in the contract of February 19, 1907, there is no defense whatever raised by the affidavits, and as to such work the right to a mandamus for payment cannot be even questioned.

There was presented for the consideration of the court still another question. The affidavit of Mr. Drumb alleged the prevailing rate of wages were not paid by the relator. The affidavits read by the relator show most conclusively that a greater rate than the prevailing rate was in fact paid employés by the relators. The truth of the relator's affidavits in this respect is not now challenged. All that can possibly be claimed on behalf of the city is the fact that three or four of the employés were not paid journeymen's wages, although they did some work on the jobs in hand. The answer to this proposition, however, is complete that these persons were not journeymen or able to perform journeymen's work. On the contrary, they were more or less inexperienced hands yet serving a portion of their apprenticeship. They were paid, however, the prevailing wage which persons of that experience and standing in the trade were paid. In so doing, we cannot see that the relator in any manner violated the terms of the statute in question. Nowhere in the statute are contractors required to employ exclusively journeymen workmen. In nearly every public work workmen of different grades of experience are needed, and the statute is complied with if the contractor pays the prevailing rate for the particular class of labor actually employed.

It was also argued that although the relator may have only employed its compositors eight hours per day on city contract work, nevertheless it was no less a violation of the statute to permit them to work an additional hour by way of overtime on jobs taken from private customers and in no way connected with public work. The statute expressly provides that "this section does not prevent an agreement for overwork at an increased compensation except upon work by or for state or a municipal corporation or by contractors or subcontractors therewith." The statute by its express terms seems to permit an employé to do independent work on other than state or municipal contracts. If the statute assumed to limit the right of a person to sell his services for outside and independent work, where he was once also engaged on public jobs, such a provision would beyond a question make the statute unconstitutional, as declared in People ex rel. Rodgers v. Coler, 166 N. Y. 1, 59 N. E. 716, 52 L. R. A. 814, 82 Am. St. Rep. 605. The operation of the statute must be thereby confined to work done for the state or municipalities in order to sustain its validity. The statute is highly penal in its provisions, and must as in all such cases be strictly construed. For these reasons the contention that the relator was not permitted to employ its compositors an extra hour on work other than city printing cannot be sustained.

109 N.Y.S.—26

For these reasons the peremptory writ of mandamus is ordered, but without costs to the relator, for the reason that the city officials owed it as a duty to themselves and the city not to pay the relator until the claims made as to the alleged violation of the relator's contract had been judicially passed on by the court.