(79 Misc. Rep. 460.)

### MacFARLANE v. MOSIER & SUMMERS et al.

(Supreme Court, Equity Term, Erie County. February, 1913.)

1. MUNICIPAL CORPORATIONS (§ 354*)—CONTRACTS—GROUND FOR CANCELLATION—LABOR LAW.

   That defendants, in contemplation of receiving a contract for a public building, engaged a contractor, who immediately proceeded with the work and worked some of his men more than eight hours a day, was not ground for canceling the contract afterwards awarded to defendants, where there was no violation, subsequent to the award, of Labor Law (Consol. Laws 1909, c. 31) § 3, fixing eight hours as a day's work on municipal contracts.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.*]

2. MUNICIPAL CORPORATIONS (§ 339*)—VIOLATION OF LABOR LAW—WHAT CONSTITUTES—"PERMITTED."

   As used in Labor Law (Consol. Laws 1909, c. 31) § 3, providing that contracts for public work shall stipulate that no person shall be permitted to work thereon more than eight hours in any one day, the word "permitted" necessitates knowledge and an active operation of the mind, and not the mere passive happening of the event; and hence a contractor

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was not responsible for a violation committed by an employé of a subcontractor without the knowledge or consent of the principal contractor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 868, 870–873; Dec. Dig. § 339.*

For other definitions, see Words and Phrases, vol. 6, pp. 5313–5318; vol. 8, p. 7752.]

Action by William B. MacFarlane against Mosier & Summers and others, under Labor Law (Consol. Laws 1909, c. 31) § 4, to have a contract canceled. Complaint dismissed.

Hamilton Ward, of Buffalo (Irving W. Cole, of Buffalo, of counsel), for plaintiff.

John W. Ryan, of Buffalo, for defendants Mosier & Summers.

Clark H. Hammond, of Buffalo, for City of Buffalo et al.

POOLEY, J. This is an action under section 4 of the Labor Law (Consol. Laws 1909, c. 31) to have a contract made by Mosier & Summers with the city of Buffalo canceled and declared void for violation of section 3, fixing eight hours as a day's work on all municipal contracts.

The Labor Law is the result of legislation and judicial discussion for many years, beginning in 1897, when the first act was passed. It was amended in 1899 and 1900, and in 1901 it was declared unconstitutional. People ex rel. Rodgers v. Coler, 166 N. Y. 1, 59 N. E. 716, 52 L. R. A. 814, 82 Am. St. Rep. 605; People ex rel. Treat v. Coler, 166 N. Y. 144, 59 N. E. 776. The Constitution was then amended, and the amendment was concurred in by the people in 1905, taking effect January 1, 1906. Under authority of the amendment, the Legislature re-enacted the law, and it is now embraced in the statutes of the state. In 1908 the constitutionality of the existing law was attacked, resulting in a decision by the Court of Appeals (People ex rel. Williams Engineering & Const. Co. v. Metz, 193 N. Y. 148, 85 N. E. 1070, 24 L. R. A. [N. S.] 201) declaring its validity, so there can be no doubt that the people have deliberately and advisedly sanctioned the provisions embraced in this statute.

In March, 1912, the commissioner of public works of the city of Buffalo advertised for bids for the construction of the Technical High School. Bidders are required to deliver with their bids either a certified check for at least 10 per cent. of the bid, which shall become the property of the city if the bidder shall fail to enter into a contract and give the required security for the performance thereof, or a bond in the penalty of 50 per cent. of the amount of the bid, conditioned that, if the bid be accepted, the bidder will enter into a written contract for the performance of the work, furnishing the materials called for by the specifications, and that the bidder will furnish security for the performance of and compliance with the contract. The specifications also provide that the bidder whose proposal is accepted shall, within five days thereafter, enter into a written contract with the city for the performance of the work and furnishing of the materials, and shall deliver a bond to the city in the penalty of at least one-third of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

amount of the bid, executed by the bidder, as principal, and a duly incorporated surety or guaranty company, as surety, for the fulfillment of the contract.

On March 28, 1912, several bids for this work were received, among them that of the defendant Mosier & Summers, for $629,000, which, on April 1, 1912, was certified by the commissioner to the common council as the lowest responsible bid; and the commissioner recommended that he be authorized to enter into a contract therefor, to be prepared by the corporation counsel. The board of aldermen took action as follows: "Received, filed, and recommendation adopted"— which was concurred in by the board of councilmen, to the effect that the action of the board of aldermen "be and the same is hereby approved," and this action of the common council became effective April 4, 1912, by the signature of the mayor. This bid was accompanied by a bond, dated March 23, 1912, in the penalty of $335,000, which recites that:

"Whereas, the principal obligor, Mosier & Summers, is about to present proposals in writing to the city of Buffalo, to furnish all labor and material for erection of new Technical High School in Buffalo, in accordance with plans and specifications proposed under the direction of the commissioner of public works of said city:

"Now, therefore, the condition of the above obligation is such that the said principal obligor, in case said proposals are accepted by the city, shall and will enter into a written contract with the city, within the time and as provided by said specifications, for the performance of the work and the furnishing of the material therein mentioned, and shall and will at the same time furnish security for the performance of and compliance with such contract and the said specifications as herein provided, and for the payment for all labor and material employed or furnished in the execution or performance of such contract, as mentioned in said specifications, then this obligation shall be void; otherwise of force."

The corporation counsel prepared the written contract, which was approved by him May 22, 1912, and on that day it was duly executed on behalf of the city by the commissioner of public works, and by the contractor, Mosier & Summers, and accompanying it was a bond in the penalty of $210,000, stating that:

"The above bounden Mosier & Summers, Inc., has entered or is about to enter into a contract to furnish all material, perform all labor in connection with the complete erection of * * * the Technical High School: * * * Now, therefore, the condition of this obligation is such that if the above bounden Mosier & Summers, Inc., shall well and truly and in good and sufficient manner perform and complete the said contract in accordance with the terms and stipulations therein contained, and shall in every respect comply with and be bound by the said contract and the plans and specifications (if any) therein referred to, and shall well and truly perform all the labor and furnish all the material necessary to fully complete the work or improvement therein contemplated, and shall well and truly pay for material used and services rendered in the execution of such contract, then this obligation shall be void. * * * *"

The uncontradicted proof is that prior to the execution of the written contract May 22, 1912, Mosier & Summers, in contemplation of receiving the contract, engaged Thomas Brown to do the excavating, and Brown proceeded at once with the work. Some of his men worked

more than eight hours, but all prior to May 22d, and when complaint was made the violation ceased.

[1] It is contended on the part of the plaintiff that upon the approval by the mayor, April 4, 1912, of the action of the common council, the contract was complete between the city and Mosier & Summers, and that, inasmuch as the alleged violation occurred thereafter, the case is made out. I cannot agree with this contention. The various proceedings had, as outlined above, were successive steps leading up to the point where obligations became fixed between the contracting parties.

First, there is a determination to build a Technical High School. Plans and specifications are provided, and bids advertised for, and in due time received. The commissioner of public works reports to the common council as to the lowest responsible bidder, and recommends that he be authorized to enter into a contract with such bidder, the contract to be prepared by the corporation counsel. The common council adopts this recommendation and the mayor approves of this action. It will be seen that up to this point no officer or official body of the city has accepted the bid. The common council, with the approval of the mayor, has adopted the recommendation of the commissioner of public works. What is the recommendation? That he be authorized to enter into a contract, the same to be prepared by the corporation counsel. The fact of a contractor being the lowest responsible bidder gives him no right to demand the contract. The city has still the right to reject his bid if it sees fit. It may at this stage abandon the project, or call for new bids.

But, assuming that the bid is regarded as satisfactory, no contract has been made, and the fact of the bid being satisfactory has not as yet been communicated to the bidder. The communication has, so far, only been taken up as between the departments of the city, and the commissioner's recommendation that he be authorized to enter into a contract advances the proceeding only so far as to justify him in calling in the corporation counsel to formulate a contract, which, if satisfactory to both contracting parties as to its terms, may be executed. Many of the terms of the contract as executed were not embraced in the bids, or in the plans and specifications, and no doubt were matter for discussion and arrangement before they could be agreed upon. Until these details had been determined, and formulated and reduced to writing and signed by the parties, there was no contract. Moreover, the charter (section 272) specifically provides that:

"The common council may order any work or improvement either with or without the recommendation of the commissioner of public works, but when such work or improvement is ordered in accordance with the plans, specifications or descriptions, the contract therefor shall be made by the commissioner, except where he may be authorized to do the work himself."

It is true that the bidder gives security that if his bid is accepted he will enter into a contract with the city. He is bound thereby; but the city does not bind itself to accept his bid, although it is the lowest, nor does it bind itself to enter into a contract. It still

has the right to decline to make a contract, and this right continues up to the actual signing.. Otherwise the contract would virtually be complete when it was ascertained who was the lowest bidder, and the subsequent steps would simply be formal. It seems clear that the Legislature had in mind this situation when it provided that the contractor should give security that he would enter into a contract based upon his bid, and also that it was not intended that the city should obligate itself until it had opportunity to determine whether or not it would accept the bid and enter into a contract. In case all the bids, including the lowest, were deemed too high, the city would still have the right to reject them, and, even when deemed satisfactory, the city did not in any way communicate with the lowest bidder, but, in the routine of its own business, approved the recommendation of the commissioner authorizing him to enter into the contract.

The bidder gives security that he will enter into a written contract if his bid is accepted, in which event this security becomes void, and when the actual contract is made he is required to give new security to the effect that he will faithfully perform it, and this security must meet the approval of the mayor. These provisions seem clearly to indicate the purpose of the Legislature to require evidence of good faith on the part of the contractor, and at the same time to safeguard the municipality from obligation until every formal step has been taken and the contract is finally signed. Edge Moor Bridge Works v. Bristol, 170 Mass. 528, 49 N. E. 918; Water Commissioner of Jersey City v. Brown, 32 N. J. Law, 504; Erving v. Mayor, 131 N. Y. 133, 29 N. E. 1101.

The conclusion is therefor reached that there was no contract between Mosier & Summers and the city until May 22, 1912, and therefore no violation by them by reason of the acts complained of as of a time prior to that date. This conclusion does not overlook the case of Argus Co. v. City of Albany, 55 N. Y. 495, 14 Am. Rep. 296, nor that of Matter of Van Arsdale v. Justice, 75 Misc. Rep. 495, 133 N. Y. Supp. 661. The Argus Case has reference to a contract for printing public notices for a period of three years, pursuant to resolution of the city authorities. It virtually amounts to the designation of the official paper. The Van Arsdale Case has reference to the purchase of a site for a municipal building. The common council directed the comptroller to advertise for proposals. Van Arsdale complied by making a bid, and the common council accepted it. This made a binding and enforceable contract between him and the city. In both of these cases, nothing remained to be done to complete the essentials of a binding contract.

[2] Having reached a conclusion which defeats this action, it is unnecessary to go further; but the case is important enough to refer to one other consideration, which I have determined adversely to the plaintiff, and it should be of sufficient public interest to state the reasons. I am of the opinion that no violation of the Labor Law by Mosier & Summers is shown, on the facts presented. This law provides that:

"Each contract to which the state or a municipal corporation is a party which may involve the employment of laborers, workmen or mechanics, shall contain a stipulation that no laborer, workman or mechanic in the employ of the contractor, sub-contractor or other person doing or contracting to do the whole or a part of the work contemplated by the contract shall be permitted or required to work more than eight hours in any one calendar day, except" in cases not pertinent here.

As above stated, the violation claimed was with reference to the men of Contractor Brown, making the excavation. There is no proof that Mosier & Summers knew of the fact, or had anything to do with these men. There can, then, be no claim that Mosier & Summers "required" them to work more than eight hours, and it narrows down to the question whether or not they "permitted" them to do so. To permit means to allow or consent to, and is the legal equivalent of the allegation that such work was done with the knowledge and consent of the person charged (United States v. San Francisco Bridge Co. [D. C.] 88 Fed. 891), implying an intent to do the thing complained of. In Coon v. Froment, 25 App. Div. 250, 49 N. Y. Supp. 305, the word "permitted" is construed as follows, by the Appellate Division, First Department:

"While it is true that the verb 'to permit' is in one sense synonymous with 'to suffer,' 'to allow,' or 'to let,' it also is equivalent to 'to give leave,' 'to license,' 'to warrant in writing,' 'to grant,' 'to empower,' 'to authorize,' 'to sanction.' "

In State of Minnesota v. Robinson, 55 Minn. 169, 56 N. W. 594, the proposition is well stated that:

"As always used, the word 'permit' includes the element of assent. When used in a statute to describe an action made penal, it must be held to include that element, unless there be something in the context clearly indicating the contrary."

Thus knowledge and an active operation of the mind are required, and the passive happening of the event is not enough to charge the consequence upon the contractor. This has been so held where employés of the contractor himself are the ones charged with the violation of the same statute. People ex rel. Hausauer-Jones P. Co. v. Zimmerman, 58 Misc. Rep. 264, 109 N. Y. Supp. 396. Much less would the contractor be held responsible where the alleged violation is committed by an employé of a subcontractor, as in the case here, without the knowledge or consent of the principal contractor.

This action appears to have been brought in good faith by a citizen of the state, and, while the complaint must be dismissed, it will be without costs.

Complaint dismissed, without costs.