[Civ. No. 688. Fourth Appellate District.—November 15, 1933.]

CLARENCE A. BRADFORD, Respondent, v. A. M. SARGENT, Appellant.

Swing & Swing for Appellant.

Fred A. Wilson for Respondent.

MARKS, J.—Respondent recovered judgment against appellant and defendants for damages suffered in a motor vehicle accident which occurred on G Street in the city of San Bernardino, between 5 and 6 o'clock on the afternoon of Saturday, June 13, 1931. This appeal is taken by A. M. Sargent alone.

A. M. Sargent was the owner of a Ford coupe. Andy Sargent was his minor son of the age of about sixteen years, and Lee Swartz was a minor of the age of about nineteen years at the time of the accident. A. M. Sargent and his son Andy lived in the city of Colton, and Lee Swartz in the city of San Bernardino.

At about 10 o'clock on the morning of June 13, 1931, defendants Earnest Hartzell and Andy Sargent entered the Ford coupe which was at the residence of appellant in Colton, and Hartzell drove it to the home of a girl friend in San Bernardino where the two boys met Lee Swartz. At about 4 o'clock in the afternoon, some other youth having taken Swartz's automobile, and he desiring to go to his home on an errand of his own, Swartz and Andy Sargent entered the Ford coupe and went to the Swartz residence.

In returning to the home of the young lady, with Swartz driving, the accident happened which caused the injury of respondent.

There is little conflict in the evidence as to the happening of this accident which may be described as follows: Respondent and two others were engaged in trimming branches from a eucalyptus tree growing in the parking on the west side of G Street in the city of San Bernardino. Three limbs had been felled and two of them had been removed prior to the time of the accident. The third had been cut into two pieces, one of which was about twelve inches in diameter and eighteen feet in length. It had been moved so that the lower end rested on the westerly portion of G Street with the other end across the curb and on the sidewalk. On the end which projected into the street there was a large splinter about two feet long, and of a width which a witness described as equaling the width and thickness of his hand at its junction with the limb, tapering to a point at the extreme end. Respondent and the two others were about to remove this limb from the street by dragging it behind an automobile which was standing on the street about five feet easterly from the westerly curb, with the rear end about three feet south from the limb which was fastened to it by a short rope. Respondent was standing on the left rear bumperette of the automobile so that he might signal approaching traffic and also signal the driver of the car when it was safe to proceed. There is some conflict in the evidence as to the distance the limb projected into the street. Respondent's witnesses fixed this distance at between eight and twelve feet. The defendants testified that it projected to about the center of the street, a distance of some twenty feet easterly from the westerly curb.

Defendants entered G Street from the west on an intersecting street a little less than two blocks north of the place of the accident. They proceeded southerly on G Street at a speed variously estimated at between twenty-five and forty miles per hour with Swartz driving. He swerved the automobile to his left when about twenty-five feet from the limb in order to go around it. When passing it both defendants heard a slight click which they described as a sound similar to that which would be made by a

stick hitting the car when run over. They proceeded on their way without stopping and without any knowledge of an accident, returning to the house of the young lady. They examined the Ford and found that the connection holding the right end of the front bumper was slightly bent. It is evident from the testimony of all the witnesses that this had been caused by its striking the end of the splinter of the limb in the street.

Late in the evening of the same day the two defendants learned that respondent had been injured by an automobile striking the 'splinter of the limb and rolling it over upon him. This was the first intimation they had that an accident had happened. They immediately went to the house of respondent but did not see him that night as the hour was late and the house was dark. They returned with two other youths the following day and talked with respondent, informing him of their participation in the accident.

On the fourteenth day of February, 1929, Andy John Sargent, one of the defendants, then of the age of fourteen years, signed an application for a motor vehicle operator's license. It was joined in and signed by his father, and Gertrude Sargent, his mother. An operator's license was issued to Andy on this application. Gertrude Sargent was deceased at the time of the trial.

Andy Sargent was arrested on the eighteenth day of March, 1931, in the city of San Bernardino for violating provisions of the California Vehicle Act. On March 20, 1931, his operator's license was suspended for ninety days by the police judge and delivered to the judge who apparently had possession of it at the time of the accident.

Prior to March 20, 1931, the Ford coupe had been used principally by Andy Sargent to travel to and from his home in Colton to school in San Bernardino. On March 20th, appellant forbade his son to drive or use the Ford or to permit anyone else other than Gordon Maltzberger to drive it for him. Maltzberger was a neighbor boy and was permitted by appellant to drive the Ford between Colton and San Bernardino for the sole purpose of furnishing Andy Sargent transportation to and from school and nowhere else. Up to the day of the accident it appears that Maltzberger was the only youth who had driven the Ford after March 20, 1931.

Appellant was employed by the Colton Cement Company and on the day of the accident left his home at about 5 o'clock in the morning for the place of his employment. Mrs. Sargent was employed in San Bernardino. She left the family home that morning at about 8:30. Neither returned until late in the afternoon. Andy Sargent and Earnest Hartzell, a boy friend of Andy's, were left alone at the Sargent home on the morning of June 13th. Another youth arrived at the residence at about 9 o'clock, during . the absence of both parents, and took the two youths for a ride in his automobile returning them to the Sargent home an hour later. The Ford coupe was standing in the driveway of the residence where it had been left the night before by appellant. Earnest Hartzell desired to return to San Bernardino in the Ford. Andy told him that his father would not like it as he had instructed him not to use the Ford nor permit anyone to do so. Earnest entered the car and was followed by Andy. He drove to San Bernardino and to the house of the young lady we have mentioned. Andy at no time drove the automobile.

Respondent seeks to support the judgment under the provisions of section 62 of the California Vehicle Act as in force at the time of the accident and also under the provisions of section 1714¼ of the Civil Code.

Appellant urges that respondent was guilty of contributory negligence as a matter of law and therefore cannot recover. He urges that respondent obstructed a public street without a permit and maintained a nuisance thereon and became a guarantor of the safety of all travelers using it. Without passing on the soundness of this argument it is sufficient to say that within the past several years it has been generally held in California that the question of whether the admitted negligence of a plaintiff contributed to his injury is a question of fact for the trial judge or jury. (*Hart* v. *Faris*, 218 Cal. 69 [21 Pac. (2d) 432].)

 The contention that appellant's liability was fixed under the terms of subdivisions a and b of section 62 of the California Vehicle Act has been resolved in favor of the appellant by the case of *Lundquist* v. *Lundstrom*, 94 Cal. App. 109 [270 Pac. 696], regardless of any question of the effect of the suspension of Andy's operator's license by the police court. In the Lundstrom case it appears that the

automobile in question was owned by Marcus Lundstrom, a minor, whose mother had signed his application for an operator's license, and was being driven at the time of the accident by Gilbert Talbot, a minor who was also a licensed operator. The court held that Mrs. Lundstrom could not be held liable under the provisions of subdivisions a and b of section 62 of the California Vehicle Act as then in force (Stats. 1923, p. 531) because her minor son was not *driving* the automobile. The facts of that case and of the instant case cannot be distinguished. Lee Swartz, a minor, who was a licensed operator, was driving the Ford coupe at the time of the injury of respondent.

Subdivision c of section 62 of the California Vehicle Act, in effect at the time of the accident, imputed to the parents the negligence of a minor whether a licensed operator or not "driving a motor vehicle upon a public highway with the express or implied permission of a parent or parents". Here again we conclude that under authority of *Lundquist* v. *Lundstrom, supra,* there could be no liability on the part of appellant because his son was not driving the car at the time of the accident. (See, also, *Bosse* v. *Marye,* 80 Cal. App. 109 [250 Pac. 693], for further definition of "driving".)

 Section 1714¼ of the Civil Code provides in part: "Every owner of a motor vehicle shall be liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner." Under the language of this section and the definition of the word "operating" in *Bosse* v. *Marye, supra,* a liability for the accident would attach to appellant for the injury of respondent if the Ford coupe had been then driven or operated with his permission, express or implied. It is therefore necessary for us to determine whether there is any evidence in the record supporting the conclusion that appellant gave either his express or implied permission to his son to use the automobile on the day of the accident.

 Express permission would necessarily include prior knowledge of the intended use and an affirmative and active consent to it. An implied consent would indicate a

sufferance of use or a passive permission deduced from a failure to object to a known past, present or intended future use under circumstances where the use should be anticipated. Knowledge of some act or intended act on the part of the user by the owner should be necessary before consent to use should be implied. (*People* v. *Conness,* 150 Cal. 114 [88 Pac. 821]; *Cramer* v. *Jenkins,* 82 Cal. App. 269 [255 Pac. 877, 256 Pac. 444]; *People* v. *Duncan,* 22 Cal. App. 430 [134 Pac. 797].) ■ It is obvious that the . burden of proving an express or implied permission rests on the party asserting the protection of the statute.

From the testimony in the record it appears that appellant on March 20, 1931, gave his son positive instructions not to drive or use the Ford coupe for ninety days and to permit no one else to drive it except Gordon Maltzberger and Gordon could only drive Andy to and from school and nowhere else. These instructions had not been violated up to the day of the accident. Appellant left his home for work at about 5 o'clock, and Mrs. Sargent left at about half-past 8 o'clock on the morning of June 13th. Neither knew that the Ford coupe had been taken and used on that day until after the accident.

■ Respondent seeks to sustain the judgment by a presumption which he maintains supports it. He arrives at this assumption by the following ingenious and circuitous route: "Among the disputable presumptions enumerated in section 1963, Code of Civil Procedure, are: '1. That a person is innocent of crime or wrong; . . . 33. That the law has been obeyed.' Section 499b of the Penal Code make(s) it a misdemeanor to take an automobile 'without the *permission* of the owner thereof . . . for the purpose of temporarily *using* or *operating* the same'. Section 146 of the California Vehicle Act at the time of the collision in question declared 'any person' to be guilty of a felony ' . . . who shall drive a vehicle not his own, *without the consent of the owner* thereof, and in the absence of the owner and with intent to either permanently or temporarily deprive the owner thereof of his title or possession of such vehicle, whether with or without intent to steal the same . . . ' (Italics ours.) Section 146 further provides that any person who assists or is a party or accessory to 'such . . . unauthorized taking or *driving* is also guilty of a felony'. Section 148 of said act at the time of said col-

lision provided that: 'Any person who shall *without the consent of the owner* or person in charge of a vehicle . . . who, while such vehicle is at rest and unattended, shall attempt . . . to set said vehicle in motion, shall be guilty of a misdemeanor.' " He cites the following cases in support of this argument: *People* v. *Milner,* 122 Cal. 171 [54 Pac. 833]; *Pabst* v. *Shearer,* 172 Cal. 239 [156 Pac. 466]; *Poncino* v. *Reid-Murdock & Co.,* 212 Cal. 325 [298 Pac. 818]; *Smellie* v. *Southern Pacific Co.,* 212 Cal. 540 [299 Pac. 529]; *Rapolla* v. *Goulart,* 105 Cal. App. 417 [287 Pac. 562]; *Fortier* v. *Hogan,* 115 Cal. App. 50 [1 Pac. (2d) 23]; *Bushnell* v. *Yoshika,* 115 Cal. App. 563 [2 Pac. (2d) 550]; *Pitt* v. *Southern Pacific Co.,* 121 Cal. App. 228 [9 Pac. (2d) 273]. We have examined these cases and none of them are factually in point.

Other states have adopted provisions similar to section 1714¼ of the Civil Code. New York and Michigan have somewhat similar enactments which have been construed by their courts. (*Psota* v. *Long Island Ry. Co.,* 246 N. Y. 388 [159 N. E. 180, 62 A. L. R. 1163]; *Chaika* v. *Vandenberg,* 252 N. Y. 101 [169 N. E. 103]; *Arcara* v. *Moresse,* 258 N. Y. 211 [179 N. E. 389]; *Kelly* v. *City of Niagara Falls,* 131 Misc. (N. Y.) 934 [229 N. Y. Supp. 328]; *Atwater* v. *Lober,* 133 Misc. 652 [233 N. Y. Supp. 309]; *Union Trust Co.* v. *American Commercial Car Co.,* 219 Mich. 557 [189 N. W. 23].)

The New York statute contains an important provision not appearing in the California enactment, namely, that the use of the automobile with the express or implied permission of the owner must be *legal.* This must be borne in mind in considering the authorities from that state. By eliminating the portions of the opinions discussing the legality of the use of an automobile by a person other than the owner, we find the rule clearly announced in that state, that the use of an automobile without the express or implied permission of the owner or contrary to the express instructions of the owner, as to the locality in which it might be operated, creates no liability on the part of the owner for the negligent acts of the user. The case of *Atwater* v. *Lober, supra,* is factually similar to the instant case. It is there said: "The intent of the Legislature was to make the owner liable for the negligence of any person

to whom he might give permission to operate his car. (*Plaumbo* v. *Ryan*, 213 App. Div. 517 [210 N. Y. Supp. 225] ; *Leppard* v. *O'Brien*, 225 App. Div. 162 [232 N. Y. Supp. 454].)

"Implied authority is actual authority circumstantially proved and is the authority the principal intended his agent to possess (citing cases) and is actual authority evidenced by conduct of the principal which has been such as to justify the jury in finding that the agent had actual authority to do what he did. (*Moore* v. *Switzer*, 78 Colo. 63 [239 P. 874].) . . .

"The burden of proof was on the plaintiff to establish all the material allegations of his complaint, including the permission of said Joseph W. Lober, by a fair preponderance of the evidence (*Legenbauer* v. *Esposito*, 187 App. Div. 811 [176 N. Y. Supp. 42]) and not by speculation or conjecture.

"To permit means to allow or consent to, and is the legal equivalent that it was done with the consent and knowledge of the person charged (*United States* v. *San Francisco Bridge Co.*, (D. C.) 88 F. 891), implying an intent to do the thing complained of. Thus knowledge and an active operation of the mind are required; and the passive happening of the event is not enough. (*People ex rel. Hausauer-Jones Printing Co.* v. *Zimmerman*, 58 Misc. 264 [109 N. Y. Supp. 396] ; *MacFarlane* v. *Mosier & Summers*, 79 Misc. 460 [141 N. Y. Supp. 143].)

"Knowledge is prerequisite to consent, and permission cannot be implied from mere user without proof of knowledge thereof. . . . As Judge Blatchford said when construing a federal statute : 'Every definition of "suffer" and "permit" includes knowledge of what is to be done under the sufferance and permission, and intention that what is done is what is to be done.' (*Gregory* v. *United States*, 17 Blatchf. 325, [Fed. Cas. No. 5803]), . . . It cannot be said that one has permitted or suffered a thing when he had no knowledge of it; the words 'suffered' and 'permitted' necessarily implying knowledge, and do not impose any duty to prevent or to use reasonable care to prevent, except where he permits or suffers after acquiring knowledge. (*Clover Creamery Co.* v. *Kanode*, 142 Va. 542 [129 S. E. 222].) Obviously the father could not permit that which

he did not know about. . . . If a statute creates a liability where otherwise none would exist or increases a common-law liability, it will be strictly construed. (Citing cases.) The difficulty of proving permission and legal use does not change the law or rules of evidence or liability. The legislature made the owner liable for the negligence of any person to whom he loaned his car, but went no further; it did not otherwise change any of the rules of liability. (*Fluegel* v. *Coudert*, 244 N. Y. 393 [155 N. E. 683]; *Leppard* v. *O'Brien, supra.*) It did not increase the liability of the lender beyond that of the master for those acts of his servant coming within the scope of his employment. The legislature may not be presumed to make any innovation upon the common law further than is required by the mischief to be remedied. . . . If the car was being driven without the owner's permission or contrary to his express orders, no liability attached to him."

The Michigan statute is quite similar to our own and does not contain the element of *legal* use appearing in the New York enactment. (*Union Trust Co.* v. *American Commercial Car Co., supra.*) It was there held that the plaintiff must sustain the burden of proving that the use of the motor vehicle at the time of the accident was with the express or implied permission of the owner in order to maintain an action against him; that proof of permission to use the motor vehicle for a limited time on a preceding day would not suffice.

Under the facts of this case we are of the opinion that the disputable and indirect presumptions "that a person is innocent of crime or wrong" and "that the law has been obeyed" (sec. 1963, Code Civ. Proc.) are not sufficient to sustain the burden of proof resting upon respondent to establish that the Ford coupe at the time of the accident was operated by his son "with the permission, express or implied" of the owner. (Sec. 1714¼, Civ. Code.)

The judgment against appellant is reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 12, 1934.