10 Cal.2d 526 (1938)
VINCENT M. HENRIETTA et al., Respondents,
v.
D. E. EVANS et al., Defendants; AUGUST G. OBERNOLTHE et al., Appellants.
L. A. No. 16421. 
Supreme Court of California. In Bank. 
January 31, 1938.
 Sarau & Thompson, Frank L. Miller and Roy W. Colegate for Appellants.
 Reay, Scharf & Reay for Respondents.
 THE COURT.
 This is an action to recover damages for injuries sustained in an automobile collision. Defendant Evans, driver of the car, was admittedly negligent, and defaulted. The sole question is whether defendants Obernolthe are liable as owners of the car, under the "driving with consent" law, Vehicle Code, section 402.
 The facts are not in conflict. Defendants Obernolthe, father and son, are engaged in the business of selling automobiles at Beaumont, California. Defendant Evans was an employee of a water district at Desert Center, some 75 miles away. On January 5, 1933, Evans went to Beaumont and negotiated with the other defendants to buy a Ford car on conditional sale. The total price was $325, the down payment $30, and the balance was to be paid at the rate of $25 per month. Evans paid $5 as a deposit to hold the car, and was to bring in the rest of the down payment. On January 20th, Evans, being on duty and unable to leave, asked Randall, a fellow employee, to take the $25 due on the down payment and bring him the car. Randall brought the money to August Obernolthe and explained that Evans wanted the car so that he could come into town to sign the necessary papers. Obernolthe gave Randall a receipt for the $25, and told him he could take the car to Evans at Desert Center, but to tell Evans to return at once to Beaumont to sign the conditional sale contract and have the certificate of ownership transferred. At the trial Obernolthe testified that he gave this permission to Evans to drive the car only for the purpose of coming into Beaumont. This was corroborated by Randall, and there is no evidence to show that Obernolthe had authorized any other purpose or use. Randall drove the car to Desert Center and delivered it to Evans with these instructions. Evans told Randall he would leave at once for *528 Beaumont, and he took the car and drove there, stopping at Indio for a short time for drinks. Arriving at Beaumont, according to his testimony, at about 1:30 or 2 P. M., he saw nobody in the Obernolthes' place of business and drove past without stopping, continuing on the way to Colton, where the collision occurred. Obernolthe testified that he had waited for Evans the preceding evening and nearly all the following day, and was only absent for short periods.
 [1] The case was tried without a jury, and judgment went for plaintiffs. It is conceded that title to the car did not pass by the transaction, and accordingly defendants Obernolthe are liable if at the time of the accident Evans was operating the car with their express or implied permission. The burden, however, is on the plaintiffs to prove such permission. (Bradford v. Sargent, 135 Cal.App. 324 [27 PaCal.2d 93]; Ewer v. Coppe, 199 Minn. 78 [271 N.W. 101].) [2] In the instant case the car was voluntarily entrusted to Evans by the owners, but it is clear that the permission was merely to drive the car to Beaumont, to sign the papers and complete the sale. There is no evidence to show authorization to use the car for any other purpose or to drive it to any other place; on the contrary, the only testimony in the record is to the effect that any other use was expressly prohibited. We have, therefore, a case of an original permission for a limited use, the scope of which was exceeded; and the question is whether the original express consent terminated prior to the accident by reason of the violation of the limitation.
 The cases uniformly hold that where the permission is granted for a limited time, any use after the expiration of the period is without consent, and the owner is not liable, unless the circumstances justify an inference of implied consent to further use. (Bradford v. Sargent, supra; di Rebaylio v. Herndon, 6 Cal.App.2d 567 [44 PaCal.2d 581]; Union Trust Co. v. American Commercial Car Co., 219 Mich. 557 [189 N.W. 23].)
 The courts in this state have not yet definitely determined whether this same rule applies where permission is granted for use in a particular place or locality, or for a particular purpose, and the limitation is exceeded. On principal, there is no fundamental ground of distinction between a limitation of time and one of purpose or place, in so far as permission is concerned; and it would seem clear that a substantial violation of either limitation terminates the original express *529 consent and makes the subsequent use without permission. For example, an owner might entrust his car to another for the purpose of driving it to his home, or to a garage for repairs; and if the driver took the car out on a pleasure trip, it could hardly be contended that he was acting with the permission of the owner. On the other hand, if the owner permitted the use of the car for a particular purpose or in a certain locality, though he gave specific instructions as to the manner of operation, the speed and care in driving, etc., it would not be reasonable to hold that the use was without permission if any of these detailed instructions were violated, for in such case the liability of the owner could in almost every case be defeated by some showing of violation of authority. (See Arcara v. Moresse, 258 N.Y. 211 [179 N.E. 389]; Chaika v. Vandenberg, 252 N.Y. 101 [169 N.E. 103].)
 This analysis has been made in cases from other jurisdictions, which have developed a doctrine analogous to the rule of deviation in the cases dealing with liability of the employer for negligence of the employee. They hold that the substantial violation of limitations as to locality or purpose of use operate in the same manner as violation of time limitations, absolving the owner from liability. (See Heavilin v. Wendell, 214 Iowa, 844 [241 N.W. 654, 83 A.L.R. 872]; Abbey v. Northern States Power Co., 199 Minn. 41 [271 N.W. 122]; Rowland v. Spalti, 196 Iowa, 208 [194 N.W. 90]; Chaika v. Vandenberg, supra; Arcara v. Moresse, supra; note, 21 Minn. L. Rev. 823, 830.) The rule and its qualifications are clearly expressed in Chaika v. Vandenberg, supra, where the court said (169 N.E. 104):
 "Here, according to the testimony of the defendant, he had given his son permission to use the automobile only on Long Island. When the accident occurred the son was operating the car in New York city. The restricted permission did not cover such use. At that time the son was operating the car illegally and without the assent of the owner."
 "A different question would arise if the son had received permission to use the car but had deviated from the owner's instructions as to the manner in which the car was to be used or the route to be taken. Deviation by an employee from the strict line of his employer's business or from his directions may not put the employee's act outside the scope of his employment; so deviation even from the terms of permission to use the car might conceivably be insufficient, of its *530 own force, to terminate the permission and render the use of the car illegal."
 These authorities are, in our opinion, sound, and the result reached is in conformity with the object of the statute. The instant case falls within the rule of these decisions, and it follows that under the facts appearing in the record, liability cannot be imposed upon defendants Obernolthe.
 The judgment is reversed.
 LANGDON, J.,
 Dissenting.
 I dissent. I am entirely in accord with the principles of law stated in the majority opinion, and as applied to the facts appearing therein, the conclusion reached cannot be challenged. But the statement that the facts are without conflict is not borne out by the record. There is a real conflict as to the scope of the permission given to drive the car, and the evidence is such that the trial court was warranted in drawing the inference that the driving at the time of the collision was with the express or implied consent of defendants.
 Neither Randall nor Evans corroborated Obernolthe's statement that Evans was authorized to drive only to Beaumont and nowhere else. Evans testified: "The best I recall the conversation with Mr. Randall at that time was, I was figuring on going on home and he told me to be sure and stop in and sign the contract as I went through Beaumont." And Randall's testimony was: "He told me to take the car out to him to Desert Center and for him to return it immediately and sign the papers at Beaumont." All the witnesses agree that Evans was instructed to drive to Beaumont at once and while there, to sign the papers; but there is no testimony save that of Obernolthe that the permission to use the car was to cease upon arrival at Beaumont, regardless of the circumstances. Evans' testimony, on the other hand, is to the effect that he was authorized to drive the car, but to stop at Beaumont to complete the transaction; and this testimony is consistent with the inference to be drawn from the receipt calling for the $25 balance of the down payment "at time of delivery". There were, moreover, some inconsistencies and uncertainties tending to discredit Obernolthe's testimony; e. g., he was mistaken as to the person from whom he originally acquired the car, and as to the date that he prepared the "pink slip". *531
 In this state of the record the trial court was justified in drawing the inference that the express permission granted by Obernolthe sufficiently covered the use under the circumstances of the instant case.
 I think the judgment should be affirmed.