[No. 14874.   In Bank. — July 20, 1893.]

MERCED BANK, RESPONDENT, v. A. ROSENTHAL ET AL., APPELLANTS.

APPEAL — SERVICE OF NOTICE — PARTNER NOT SERVED WITH SUMMONS. — In an action against two partners to have a deed executed by one of them declared a mortgage to secure the partnership indebtedness, in which the other partner was not served with summons and did not appear in the action, and the issues were made up and a trial and judgment had between the parties to the deed in his absence, the absent partner is not an adverse party upon whom the notice of appeal must be served, within the meaning of section 940 of the Code of Civil Procedure.

APPEAL FROM VOID JUDGMENT — JURISDICTION. — The supreme court will entertain an appeal from a void judgment rendered by a court without jurisdiction, or coram non judice, where it is entered in form as a judgment in the records of a court upon which final process might be issued.

TERM OF OFFICE OF SUPERIOR JUDGES — TIME OF COMMENCEMENT — CONSTITUTIONAL CONSTRUCTION. — Though by the terms of section 6 of article XI. of the constitution the commencement of the term of office of the superior judges, appears to be exclusive of the first Monday of January next after their election, yet this provision is controlled by the provision of section 20 of article XX., making the terms of all officers elected under the constitution commence on the first Monday after the first day of January next following their election.

JUDGMENT RENDERED AFTER TERM — JURISDICTION OF JUDGE DE FACTO. — A judgment rendered by a retiring superior judge on the first Monday of January next after the election of his successor, is not coram non judice, and void for want of jurisdiction, where it appears that both the outgoing and incoming judge were of the opinion that the term of the incoming judge did not commence until the following day, and the outgoing judge was in fact holding court on that day, and the superior judge elect was before him as an attorney. Under such circumstances the outgoing judge was clearly a judge de facto.

DEED OF HOMESTEAD INTENDED AS MORTGAGE — ACKNOWLEDGMENT. — A deed of a homestead absolute on its face, and a contemporaneous agreement that it is given to secure a present indebtedness and future advances, together constitute a mortgage; and if the contemporaneous agreement is not acknowledged by the husband and wife, as required by section 1242 of the Civil Code, no encumbrance is created on the homestead.

ID. — DEED INTENDED AS MORTGAGE NOT A CONVEYANCE — EFFECT UPON HOMESTEAD. — A deed intended as a mortgage does not pass the fee or have the effect to destroy a homestead upon the property, which is retained subject to the

encumbrance of the mortgage, and the conveyance may be shown to be a mort-
gage only, both at law or equity, whenever any rights are asserted under it.

ID.—ACKNOWLEDGMENT BEFORE AGENT OF GRANTEE.—An acknowledgment of a
deed taken before the grantee is void, and it seems (though not decided) that
where the acknowledgment is essential to the validity of the deed, an agent of
the grantee cannot properly take the acknowledgment.

APPEAL from a judgment of the Superior Court of Merced
County, and from an order denying a new trial.

The facts are stated in the opinion.

*Frank H. Farrar*, for Appellants.

*T. C. Law*, and *Breckinridge & Peck*, for Respondent.

THE COURT.—Upon due consideration of this cause, after
hearing in Bank, we are satisfied with the conclusion reached
and the opinion rendered in Department; and for the reasons
therein given, the judgment and order appealed from are
reversed and the court below is directed to enter judgment for
the defendants on the findings.

The following is the decision above referred to, which was
rendered in Department Two on the 28th of December, 1892:—

TEMPLE, C.—This action is brought to have a deed, abso-
lute on its face, declared a mortgage, and to obtain a foreclos-
ure of the same. It is brought against A. Rosenthal and S.
Peckerman, as copartners, doing business under the style of
Rosenthal and Peckerman, and against A. Rosenthal and S.
Peckerman and Betsy Rosenthal, wife of A. Rosenthal.

It is averred that on and prior to July 20, 1883, the copart-
nership and A. Rosenthal and S. Peckerman were indebted to
plaintiff in the sum of $2,000, and "being desirous of estab-
lishing a further credit with plaintiff, and of securing the pay-
ment of said moneys then due plaintiff, and of securing the
payment to plaintiff of any and all other sums of money and
advances that might thereafter become due to plaintiff from said
defendants or any of them, and also of securing any and all
balances that might thereafter be found due from said defend-

ants or any of them to plaintiff in the course of their dealings, whether such indebtedness should be evidenced by promissory notes then or subsequently given or otherwise.

"The defendants, A. Rosenthal and Betsy Rosenthal, on the twentieth day of July, 1883, to secure the plaintiff of the principal sum then due, and thereafter to become due to plaintiff for moneys thereafter to be advanced to said defendants, and the interest thereon as hereinabove stated according to the tenor of any promissory notes or other instruments, then or thereafter to be given" .... on said twentieth day of July, 1883, executed to plaintiff a deed for the mortgaged premises, absolute on its face, but intended to be and in fact a mortgage, "to secure the payment to plaintiff of all money then due at the day of its date and all moneys to become thereafter due from said defendants Rosenthal and Peckerman, and A. Rosenthal and S. Peckerman."

It is also alleged that Rosenthal and Peckerman were partners and that certain indebtedness accrued from them to plaintiff subsequent to July 20, 1883, part of which was evidenced by promissory notes which are set out at length in the complaint.

Judgment is asked against defendants Rosenthal and Peckerman for $1,412, with interest at one and one-half per cent per month from June, 1884, for costs and for an attorney's fee, a decree of foreclosure and sale of the premises, and for a judgment for the deficiency, if any, against defendants Rosenthal and Peckerman.

The defendants, A. Rosenthal and Betsy Rosenthal, appeared and answered at length, and as between them and plaintiff a trial was had. It does not appear that Peckerman was served with summons, and he did not appear in the case. No default or judgment is entered against him.

A decree was entered in favor of plaintiff against A. Rosenthal and Betsy Rosenthal, declaring the deed to be a mortgage, and for a sale of the premises, for the payment out of the proceeds of the sale of the sum of $2,306.95 found due, with direction to the sheriff to report the deficiency, if any, to the court.

This appeal is taken by A. Rosenthal and Betsy Rosenthal from the judgment and from an order refusing them a new trial. The notice of appeal was served upon the plaintiff, but

not upon S. Peckerman, and an objection is now made to the jurisdiction of this court to hear the appeal, because the notice was not served on Peckerman. It is contended that the judgment discharges Peckerman from the debts so far as plaintiff is concerned, that upon a reversal he may be brought in and made responsible. He, therefore, it is argued, has an interest in maintaining the judgment, and is an adverse party, within the meaning of section 940 of the Code of Civil Procedure. But was Peckerman a party to the judgment? It does not appear that he was served with summons or that he appeared in the case. The issues were made up between the plaintiff and appellants, who went to trial without objection on the ground that Peckerman was not served. The judgment then is neither for nor against him. If he had not been named as a party at all the judgment would have had the same effect upon his interest as now, and upon the reversal of such a judgment he might be brought in and made responsible as now. But though his interests might be effected by the appeal, he would not, in such case, be an adverse party, nor is he now, as the case stands.

The first point made by appellants is that the judgment is void, because not rendered by a superior judge, but by one Charles H. Marks, who at the time had no official character whatever. It appears that J. K. Law, one of the attorneys for plaintiff, had been elected superior judge of Merced County, at the election in 1890, to succeed Judge Marks, whose term would expire in January following. Judge Law had duly qualified as such judge. This case had been tried some months before, but no findings or judgment had been entered. On Monday, January 5, 1891, that being the first Monday of January following the election of Judge Law, findings were signed by Judge Marks, and an order for judgment made. On the same day judgment was entered "on motion of J. K. Law, Esq., counsel for plaintiff," upon the findings attested as follows:—

"Done in open court the fifth day of January, 1891.

                                "C. H. Marks,
                        "Judge of the Superior Court."

Appellants claim that Judge Marks' term of office expired

with the fourth day of January, 1891, and Judge Law's term began with the first instant of January 5, 1891. Therefore Marks was not judge when the findings and judgment were made, and the judgment is void.

Respondent in reply to this point contends: 1. The question is not properly presented, and cannot be raised on this appeal. 2. Judge Marks' term did not expire until twelve o'clock Monday night; and 3. Marks was at least judge *de facto.*

1. Respondent concedes that an appeal may be taken from a void judgment, that is, from an apparent judgment which is no judgment, and that on such appeal the court may determine that the lower court committed such error as will render its proceeding void. This is to review the action of a court, and is in line with its usual functions. The appellant in such a case by appealing does not concede that there is a proper judgment, but only that there is a judgment in form, which he claims is erroneous, even to the extent of rendering it void. But an appeal is necessarily, he contends, from a court to a court, and therefore the appeal concedes that the act which appellant asks to have reversed is the act of a court known to the law, and whose judgments may be reversed here on appeal. One cannot assume the fact of the existence of a court simply to appeal in order to have it declared that such fact does not exist.

An objection might be urged to the proposed act of a court that it would be without jurisdiction, but how could one raise the objection that the tribunal was no tribunal? To raise the question would be to ask that the point be sustained, that is to recognize the tribunal as such. Can an objection be raised on appeal which could not in any mode have been submitted to the lower court? And then how in such a proceeding can the respondent show that the acting judge was a judge *de facto* — that he was actually holding the place, was reputed to be a judge, and that his acts as such had been acquiesced in?

This reasoning on the part of appellants is certainly specious and plausible, but I think only so. It has been held that this court will entertain an appeal from a void judgment under a law giving it jurisdiction of appeals from judgments. A judgment rendered by a court which has no jurisdiction is a judg-

ment made by one who was not legally a judge in that case. Legal 'phraseology has always designated such a proceeding as *coram non judice* and therefore void. Still, as in this case, it would be in form a judgment, entered in the records of a court upon which final process might be issued, which, although void, might through judicial machinery be made oppressive to individuals. It is therefore a grievance which may properly be remedied by a tribunal which exists for the correction of errors.

' This is not saying that an appeal is the only remedy the aggrieved party may have, and since the respondent has no opportunity to prove extrinsic facts which might show that Marks was *de facto* judge, perhaps the inquiry on that point must be limited, and facts presumed to exist, if in the nature of things any could have existed, which would establish the regularity of the proceeding.

2. Since I think it must be held that Marks was at least a *de facto* judge, it will not be necessary to discuss the second point made by respondent at much length. Some idea of the claim of Judge Marks that his term continued until Tuesday is necessary, however, to show that both he and Judge Law were acting in good faith in claiming that Judge Marks' term had not yet ended. Section 6 of article VI. of the constitution provides: "The term of office of judges of the superior courts shall be six years from and after the first Monday of January next succeeding their election." It is contended that the whole . term must be after Monday, that the use of either word "from" or "after" would exclude Monday, and by using both words an intention is manifested to make this clear. The expression cannot be made to mean "from and including," as interpreted in section 69 of the Code of Civil Procedure.

' To sustain this position numerous authorities are cited, and if the question depended upon this language alone, I think the position of respondent would be impregnable; but it is not the only provision in the constitution affecting the question. Section 20 of article XX. is: "Election of officers provided for by this constitution . . . . shall be held on the even-numbered years next before the expiration of their respective terms. The terms of such officers shall commence on the first Monday after the first day of January next following their election."

Respondent contends that this provision does not apply to superior judges, because their term is to commence on the first Monday in January, which might be the first day of January, when according to section 20 of article XX. the term would commence on the eighth and not on the first.

On the supposition that the provision fixing the length of the term was intended to fix the commencement of it, the two provisions would be repugnant. And on the same supposition, section 20 of article XX. is repugnant to all the provisions in the constitution in regard to the terms of all other officers pro. vided for, except railroad commissioners and members of the legislature.

Section 2, article V., provides: The governor shall hold his office four years "from and after the first Monday after the first day of January," plainly excluding Monday. All the executive officers hold office for the same term as the governor.

Section 3, article VI. The term of office of the chief justice, and the associate justices of the supreme court shall be twelve years from and after the first Monday after the first day of January. These provisions are as clearly repugnant to section 20, article XX., as the provision in regard to superior judges, for they exclude Monday. The only way to reconcile them is to suppose, as no doubt the fact was, that in fixing the length of the term, the attention of the convention was not distinctly called to the exact date of the commencement, but the last section was intended to perform this office, and to provide that all officers of the state should take office on the same day. Having provided for this generally, no reason can be imagined for providing a different date for the commencement of the term of superior judges; and very seldom would there be any difference. A calculation made for me shows that the terms of none of Judge Marks' successors in office will commence in a year when Monday will be the first day of January, until 1945. Certainly a different rule could not have been intended for them from that provided for other officers; and supposing section 6, article VI., is to control, there would then occasionally happen a time when the term would be more or less than six years, or we would have occasionally two judges legally holding the same office, and occasionally none at all. This would happen when-

ever the new term commenced on a different day of the month from that on which the old term commenced. On the whole, even if it must be concluded that section 6, article VI., and section 20, article XX., are repugnant, the latter must control.

3. Now was Marks a de facto judge? It appears that he was in fact holding court on that day. Judge Law was before him as an attorney. We must conclude that both believed that Mark's term included Monday; and as we have seen, the constitution is quite capable of that construction. In fact, if we look only to the provision providing specially for the terms of superior judges, such construction would be inevitable.

Under the authorities, which it is unnecessary to criticise, Marks was clearly a judge de facto. (State v. Carroll, 38 Conn. 449; 9 Am. Rep. 409; Petersilea v. Stone, 119 Mass. 465; 20 Am. Rep. 335; Cromer v. Boinest, 27 S. C. 436; Gilliam v. Reddick, 4 Ired. 368; Brown v. Lunt, 37 Me. 423; Hamlin v. Kassafer, 15 Or. 456; 3 Am. St. Rep. 176; Leach v. Cassidy, 23 Ind. 449; State v. Durkee, 12 Kan. 308; Braidy v. Theritt, 17 Kan. 468; Carli v. Rhener, 27 Minn. 292; Woodside v. Wagg, 71 Me. 207.)

We come now to the questions involving the merits of the case. To the consideration of the motion for a new trial the respondent raises the objection that the notice of intention was not served on Peckerman. This question is identical with that discussed in regard to the notice of appeal and need not be further considered. A very serious question is also raised as to the statement of the grounds of the motion, so far as it involves the sufficiency of the evidence. It is admittedly sufficient in its statement as to alleged errors of law excepted to. As I think there is a point which is distinctly raised in these, which could in fact as well have been presented on the judgment-roll on the appeal from the judgment, which must be held to be fatal to the judgment and to plaintiff's right to recover at all, it will not be necessary to pursue that matter further.

The court found, in accordance with the allegations of the complaint, that the defendant Rosenthal conveyed the mortgaged premises to plaintiff by a deed absolute on its face, and for an express consideration of $1,250; that by a contemporaneous agreement, which the evidence shows was not in writing,

the conveyance was converted into a mortgage to secure an exist-ing indebtedness, and for future advances, to be made by the bank to A. Rosenthal and S. Peckerman or either of them, and the interest thereon, according to the tenor of any promissory notes thereafter to be given for such indebtedness; that nearly one year after the date of the deed, the firm of Rosenthal and Peckerman, and the partners individually, executed to plaintiff two notes to secure the balance for such advances then due. One note was for $600 and the other for $812. Both were due one day from date and bear interest at the rate of one and one-half per cent per month. This suit was commenced June 20, 1888.

The answers of the defendants admit that the deed was intended as a mortgage, but deny that it was given to secure further advances, and aver that it was to secure the precise sum of $1,250, then borrowed from the bank, which sum they aver had been fully paid before the commencement of this action.

Other defenses are pleaded, among them the discharge of both Peckerman and A. Rosenthal in insolvency. It is also shown, and it is so found by the court, that the mortgaged premises, at the time the conveyance was made, composed the homestead of A. Rosenthal and Betsy Rosenthal, which had been carved out of their community property.

It was claimed in the court below, and now urged here, that the mortgage under such circumstances is void, at least as to future advances. It is also insisted here that the acknowledg-ment is void because taken before Bates, who was president and manager of the bank, and·represented as plaintiff in this action. It has been held that an acknowledgment taken before the grantee of a deed is void. (*Brown* v. *Moore*, 38 Tex. 645; *Groesbeck* v. *Seeley*, 13 Mich. 329; *Beaman* v. *Whitney*, 20 Me. 413; *Wilson* v. *Traer*, 20 Iowa, 231; *Stevens* v. *Hampton*, 46 Mo. 404; Proffatt on Notaries, sec. 35.)

Where the only effect of the acknowledgment is to impart notice by recording the deed, it would seem that to be void it must appear on the face of the instrument. Where, however, the acknowledgment is essential to the validity of the deed, I see no reason why the objection would not be as good against an acknowledgment taken before the agent of the grantee as

before the grantee himself. However, this objection does not seem to have been made in the court below, and the other point is sufficient. This question need not therefore be now decided.

The constitution requires the legislature to protect by law the homestead from forced sale. (Art. XVII., sec. 1.)

Section 1241 of the Civil Code declares that a sale upon foreclosure of a mortgage is a forced sale. It provides:—

"The homestead is subject to execution or forced sale in satisfaction of judgments obtained:

"3. On debts secured by mortgages on the premises, executed and acknowledged. by the husband and wife, or by an unmarried claimant."

The next section is as follows:—

"Sec. 1242. The homestead of a married person cannot be conveyed or encumbered, unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife."

What character or quality does the law add to the tenure by which the homestead is held as so much property, to make it a statutory homestead?

I think it must be answered that this consists in the restrictions placed upon the power to alienate or encumber it, its exemption from forced sale under execution, and in the disposition made of it upon the death of either.

If the deed absolute on its face could be said to convey the fee, it might perhaps be argued that by it the homestead was destroyed, but the fee did not pass by the deed. It was a mortgage only, both at law and in equity, and could be shown not to be a conveyance whenever any rights were asserted under it. (*Smith* v. *Smith*, 80 Cal. 323; *Locke* v. *Moulton*, 96 Cal. 21.) The premises retained their character as a homestead after the execution of the conveyance; for it is the homestead that may be encumbered and which may be sold upon a judgment obtained upon a debt secured by a mortgage upon it.

I think it proper also to call attention to the fact that the word in section 1242 is "encumbered" rather that "mortgaged," thus specifically calling attention to the act which burthens the property.

By what then is the homestead encumbered? Is it by the

conveyance absolute on its face or by the contemporaneous oral agreement that a debt may be created which shall be an encumbrance upon the homestead, or by both? Plainly it requires both to create the encumbrance—to burthen the estate with a debt. It must therefore follow that the encumbrance here was not created by an instrument executed and acknowledged by the husband and wife. And if it would be held good for the present indebtedness, would not every new advance be a fresh burden or encumbrance not created by such instrument?

Such a conveyance, even if expressly securing future advancements, would constitute a power in another to encumber at his will. It has been held that the homestead cannot be conveyed by either husband or wife or both, where one acts through an attorney in fact.

In *Lies* v. *De Diablar*, 12 Cal. 328, it was said that the homestead was for the benefit of the family, including the children, and husband and wife, both together could dispose of it only as the legislature might authorize.

*Barber* v. *Babel*, 36 Cal. 11, holds, as does *Flege* v. *Garvey*, 47 Cal. 371, that husband and wife must personally join in the conveyance of the homestead. In *Gagliardo* v. *Dumont*, 54 Cal. 496, it was expressly decided that the homestead could not be conveyed by husband and wife when the execution by the husband was through an attorney in fact.

It should be noticed that even as to the husband, under the Homestead Act, the acknowledgment is an essential element in the conveyance. But even if it can be maintained that a mortgage expressly given for further advances in an indefinite amount and on terms as to time and rate of interest to be agreed upon by a person other than the mortgagor would be valid, because it can be argued that it is included in the instrument, it cannot be held so here, for in no way is there any such authority in the instrument executed and acknowledged by the husband and wife.

It is contended that the case of *Bull* v. *Coe*, 77 Cal. 54; 11 Am. St. Rep. 235, is opposed to these views; but in that case this point does not appear to have been raised. The property there was the separate property of the wife, and the point discussed was as to the sufficiency of the acknowledgment as a

XCIX. CAL.—4

conveyance of the wife's separate property. The deed there also recited that the deed was in trust, the conditions of which were set out in a paper referred to. It was held that the deed was properly acknowledged notwithstanding the fact that the paper expressing the terms of the trust was not signed until after the deed was so acknowledged. Whether that conclusion was right or wrong does not affect this case. The discussion there was in regard to the statute concerning acknowledgments, and not in regard to the homestead right.

I think the judgment and order should be reversed, and the court below directed to enter judgment for the defendants on the findings.

VANCLIEF, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order are reversed, and the court below is directed to enter judgment for the defendants on the findings.

SHARPSTEIN, J., DE HAVEN, J., MCFARLAND, J.