[Civ. No. 5329.   Third Appellate District.—April 25, 1935.]

JOSEPH OVERTON et al., Respondents, v. HARRY I. HARBAND et al., Defendants; TITLE INSURANCE AND TRUST COMPANY (a Corporation) et al., Appellants.

Earl E. Johnson, Lawrence L. Otis, Gilbert E. Harris and Arch H. Vernon for Appellants.

William J. O'Brien for Respondents.

RANKIN, J., *pro tem.*—This is an appeal by defendants, Title Insurance and Trust Company, and Mortgage Guarantee Company, from a judgment decreeing a trust deed executed in the name of one Henry Schwartz, and conveying certain real property described therein, to Title Insurance & Trust Company, as trustee, and naming Mortgage Guarantee Company as beneficiary, to be null and void, and restraining appellants from asserting any rights thereunder.

The material facts bearing upon the questions raised by the appeal are as follows:

Respondents, Joseph Overton and Eliza A. Overton, are husband and wife, and on August 10, 1931, were the owners of the property described as Lot 59, Block 7, of McCarthy Company's Florence Avenue Heights tract, in the city of Los Angeles, and improvements thereon consisting of bungalow court.

Following negotiations instituted some time in July, 1931, they sold the property, presumably to one Harry I. Harband, for a consideration of $10,000, evidenced by a promissory note in said amount, executed by Harco Construction Company and Harry I. Harband, in which deal it was agreed

that respondents were to receive the sum of $700, one year's interest under the terms of said note, in advance.

On August 10, 1931, respondents went to the office of said Harry I. Harband, in the city of Los Angeles, delivered to him the deed they held to the property, their certificate of title and all insurance policies. Harband then requested them to sign a deed to the property, and respondents signed the instrument on the lines indicated by Harband, and left the deed on Harband's desk. Neither of them read the deed, nor did they know whose name was written therein as grantee, or if any person was named as grantee. They then received from Harband the $10,000 note and $700, one year's interest thereon. Respondents then delivered to Harband the possession of the property, and Harband collected the rents thereon for the month of August.

The deed signed by respondents was recorded August 12, 1931, at the request of the grantee. The grantee named in the deed is Henry Schwartz (a single man). The instrument purported to have been acknowledged before Harry I. Harband, a notary public, his certificate of acknowledgment being in due form and bearing the imprint of his notarial seal.

On August 12, 1931, Harband appeared in the office of the Mortgage Guarantee Company and met O. Henry, Jr., escrow officer of said company, and presented to him a written application for a loan of $3,000 on the property involved in this action, purporting to have been signed by Henry Schwartz. Harband was not personally known to Mr. Henry, but stated that he was Henry Schwartz. A note and a trust deed conveying the property to the Title Insurance & Trust Company as trustee, was prepared and delivered to Harband, who took the same to his office and signed the name ''Henry Schwartz'' thereto, and a notary public executed the certificate of acknowledgment in due form, certifying to the execution of the trust deed by ''Henry Schwartz''. Harband then delivered said note and mortgage to the mortgage Guarantee Company, and on August 13th, Title Insurance & Trust Company issued its loan policy in the usual form in favor of Mortgage Guarantee Company, insuring the trust deed to be a valid incumbrance and a first lien upon the property, and delivered

it to Mortgage Guarantee Company. Before the loan policy was issued the examiner of Title Insurance & Trust Company called Mr. Overton on the telephone and asked him whether he had sold the property, to which question Mr. Overton replied that he had. Upon receipt of said instruments, Mortgage Guarantee Company paid over to Harband the amount of the loan, less expenses thereof, and immediately placed the trust deed on record. Payment of the proceeds of said loan were made to Harband by check payable to Henry Schwartz. Harband received this check and endorsed the same in the name of Henry Schwartz, and underneath the name of Henry Schwartz he wrote his own name also, as endorser. These negotiations were carried on with the Mortgage Guarantee Company officials by Harband, under the name of Henry Schwartz, and it was some three weeks after the transaction was closed that appellants, or either of them, learned that the real name of the man to whom they had made the loan as ''Henry Schwartz'', was Harry I. Harband.

Defendant Harband had a brother-in-law living in Los Angeles by the name of Henry Schwartz. This brother-in-law was a tailor by trade, and had no knowledge of said transactions carried on by Harband until the fourteenth day of October, 1931; made no claim to the property; received none of the money from the loan placed thereon; and did not authorize in any manner the use of his name in said transaction.

Appellants filed an answer herein denying material allegations of the complaint and as a matter of defense, alleging that defendant Harry I. Harband adopted and used the name ''Henry Schwartz'' in acquiring title to the real estate involved, and in making a loan thereon. Appellants also, as a further and separate defense, pleaded that plaintiffs are estopped from denying the execution of said deed as against appellants.

The court made lengthy findings to the effect that all the material allegations of the complaint are true, and the allegations of the answer are untrue, and entered judgment in accordance therewith.

The first contention advanced by appellants is, that the trial court's finding that the name of the grantee was not

contained in the grant deed executed by respondents, and that subsequently Harband inserted the name "Henry Schwartz" therein, is not sustained by the evidence.

■ The law is well established, and it is conceded by counsel that a deed in which the name of the grantee is left blank and in which the name of the grantee is afterwards inserted without authority of the grantor, is void—a nullity.

■ The question here involved is whether or not the evidence sustains the finding to that effect. A certified copy of the deed was offered and received in evidence. Section 1951 of the Code of Civil Procedure provides:

"Every instrument conveying or affecting real property, acknowledged, or proved and certified, as provided in the Civil Code, may, together with the certificate of acknowledgment, or proof, be read in an action or proceedings, without further proof; also, the original record of such conveyance or instrument thus acknowledged or proved, or a certified copy of the record of such conveyance, or instrument thus acknowledged or proved, may be read in evidence, with the like effect as the original instrument, without further proof."

And sections 1920 and 1948 of the same code make such proof *prima facie* evidence of the execution of the writing and of the facts stated therein. The deed is sufficient in the absence of evidence to the contrary. (*Thomas* v. *Fursman,* 177 Cal. 550, 553 [171 Pac. 301].)

The burden of proving that at the time respondents signed and acknowledged the deed the name of the grantee was not written therein, was upon respondents. Counsel for respondents rely mainly upon so-called conflicts in the evidence of defendant Harband in support of the said finding. Harband's evidence was taken by deposition on September 15, 1932, before a notary public, and read in evidence at the trial. On the point now under consideration he testified in substance as follows:

"The deed was prepared in my office in the Western Pacific Building, Los Angeles. I took the certificate of acknowledgment as a notary public. I asked them to acknowledge their signatures, and they acknowledged them at the time of signing the deed. The deed had been prepared previously with the exception of the acknowledgment. The name

'Henry Schwartz' was placed in the deed at the time they affixed their signatures. I inserted that name before the signing. I am positive that the name of the grantee was inserted at that time. Mr. Harband: I merely wanted to state that Mr. Overton, after he had read the deed, he handed it over to Mrs. Overton. Then, after she had read it and handed it back to Mr. Overton, he pulled his chair forward up to the desk and signed it and then called to Mrs. Overton to also come forward and sign it. Then, after they signed it, he handed me the deed. Mr. O'Brien: Q. After that you inserted the name of Henry Schwartz? A. I did not. It was inserted before either party had signed it. As I have said, it was before the signing of the notary document. Q. Do you recall, Mr. Harband, of having given a deposition in this matter in Los Angeles? A. I do. Q. . . . I will read a few questions and answers which are part of that deposition found on page 8. It is a deposition given by Henry I. Harband on October 7, 1931, at the office of William J. O'Brien, 903 California Building in the city of Los Angeles, before Florence Kelly, a notary public.'' Following are excerpts from the previous deposition: ''Q. Mr. Overton, you say, deeded this property to you? A. Yes, sir. Q. That was your answer, I believe, to one of my former questions. 'Q. It is a fact that it was deeded to Henry Schwartz? A. The paper was signed in blank with instructions that I could deed it to whoever I wished to deed it to. Q. The name of the grantee was not in the deed when signed? A. Yes, sir, it was deeded to Henry Schwartz, yes, sir, in his presence, Mr. Overton's presence. Q. The name of Henry Schwartz was not in the deed when Mr. and Mrs. Overton signed it? A. Yes, sir, it was. Q. Then what do you mean when you said it was signed in blank? A. Mr. and Mrs. Overton signed the deed and I put the name of Henry Schwartz in, in their presence.' Mr. O'Brien: Q. Did you so testify? A. I did. Mr. Vernon: And in pen there is marked, 'additional testimony on page 12–A,' initialed 'C. T. D.' '' And page 12–A reads as follows: ''In reference to deposition given by myself on Oct. 7, 1931, at the office of William J. O'Brien, 903 California Bldg., in the City of Los Angeles, before Florence Kelly, a notary, I testified that I had inserted the name of Henry Schwartz,

after the deed was signed. This is erroneous on my part, as I intended to say that I had signed the name of Harry I. Harband after the deed was signed, as a notary public, Harry I Harband; initialed 'C. T. D.' ''

The record discloses that the Harband deposition of October 7, 1931, was taken before appellants were made parties by amendment of the complaint, and without notice to appellants; that it was offered in evidence, and objected to by appellants. The objection was properly sustained and the deposition received in evidence as to defendants other than appellants. It was rejected as proof of the facts therein stated, and it therefore could be used or referred to on the cross-examination of Harband only for purposes of impeachment, and that counsel so intended is indicated by his laying the proper foundation for impeachment. The court could consider the same only for that purpose, and when so considered the only effect of the prior conflicting statement would be to neutralize his testimony given at the trial. On this point we quote from *Albert* v. *McKay & Co.*, 174 Cal. 451, at page 456 [163 Pac. 666]: ''When a witness is impeached by proof of prior inconsistent statements, the effect is merely to discredit him as a witness. The former statements made by him are incompetent for any other purpose. They do not constitute evidence of the truth of the facts so stated by him. (2 Wigmore on Evidence, sec. 1018; *Keyes* v. *Geary Street etc. R. R. Co.*, 152 Cal. 437, 441 [93 Pac. 88]; *Worley* v. *Spreckels Bros. Commercial Co.*, 163 Cal. 60, 71 [124 Pac. 697].) ''

We find in the evidence no such substantial conflict in the testimony of Harband as would justify any inference in support of the finding. Nor is there any merit in respondents' argument that statements of Harband were received as admissions of the defendant. The record contains no evidence sufficient to overcome the *prima facie* effect of the certified copy of the record of the deed.

Appellants' next contention is that even if respondents' deed to the property was executed in blank and therefore void, still respondents are estopped from denying the validity of their deed. As the judgment must be reversed as to appellants, and the cause may again be tried, we deem it necessary to discuss the question of estoppel.

Respondents come into a court of equity and by their amended complaint, filed January 29, 1932, ask equitable relief from a lien on their real property given appellants. That appellants are in the position of innocent incumbrancers relying upon the record, is not controverted. Respondents executed and delivered the deed conveying their property presumably to Harband, but without any investigation upon their part, or apparent interest in the wording of the deed, and without exercising any due diligence to ascertain the value of the consideration they received, and of which they now complain. This act was the basis of the record title which was relied upon by appellants in subsequent transactions. Respondents received the consideration they had agreed to take for the property, and there is no proof that it was not an adequate and valuable consideration. They delivered possession of the property to the person with whom they made the deal. A day or two later, Mr. Overton stated to the title examiner for appellant, Title Insurance and Trust Company, that he had sold his property on 79th Street. It is evident that the policy of title insurance would not have been issued, and the loan would not have been made had not respondents done these things. One who prays equitable relief must be willing to do equity. Bearing in mind the fact that respondents received and retained the full consideration paid them for their property, we cannot say that equity will be done by returning to respondents their property, while they retain the selling price.

After reviewing the authorities the Supreme Court said, in the case of *Trout* v. *Taylor,* 220 Cal. 652 [32 Pac. (2d) 968] : ''An innocent purchaser taking a void instrument can, however, find protection in the doctrine of estoppel, where circumstances are presented which establish negligence or some other misconduct by the other party, which contributed to the loss. Section 3543 of the Civil Code provides broadly that 'Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer'.''

We think it clear under the facts of the instant case that respondents were negligent in their transactions relative to their property rights, and particularly, in that they permitted their deed to be recorded, delivered possession of the

property, and stated to the title examiner that they had sold the same. By their carelessness and undue confidence they enabled Harband to obtain the money of an innocent third party, and to this situation, section 3543 of the Civil Code is peculiarly applicable. The finding against the plea of estoppel is not sustained by the evidence.

We come now to the question involving the validity of the trust deed executed by Harband in the name "Henry Schwartz", to secure the loan of $3,000 made to him by Mortgage Guarantee Company.

Appellants maintain that the trust deed is valid, Harband having taken title for himself in the assumed name "Henry Schwartz". Respondents claim the trust deed was forged by Harband and therefore is void, and in support of such contention rely upon the presumption under section 1963 of the Code of Civil Procedure, subdivision 25—"identity of person from identity of name". They cite a line of authorities holding that the identity of names is *prima facie* evidence of identity of persons, and point to the fact that Harband had a brother-in-law by the name of Henry Schwartz. The uncontradicted proof, however, shows that Henry Schwartz, the brother-in-law of Harband, had no knowledge of the transaction until after its consummation. He paid no consideration for the property, nor did he receive anything from the proceeds of the loan, or otherwise, or at any time sign any paper or authorize any person to deal for him with reference to the transaction, nor did he claim any interest therein. He was married and resided at 1402 Fourth Avenue, Los Angeles, and at no time resided at 1150 So. Hayworth Street, the residence number given in the Henry Schwartz papers on application for the loan. All of Harband's dealings with appellants were carried on by him under the name "Henry Schwartz". The only evidence in the record indicating that Harband intended to vest title in his brother-in-law, Henry Schwartz, is the testimony of the witness, Adams, admitted over appellants' objection, that at some time subsequent to the completion of the deal and the recordation of the papers, Harband, in connection with an attempt to sell the property, told the witness that the property stood in the name of his brother-in-law, Henry Schwartz. This testimony is inadmissible, as it is well

settled that the rights of the grantee or mortgagee cannot be prejudicially affected by the *ex parte* statements or admissions of a grantor or mortgagor made after the execution of a grant or mortgage. (10 .Cal. Jur. 1092; *Silva* v. *Serpa,* 86 Cal. 241 [24 Pac. 1013] ; *Bollinger* v. *Bollinger,* 154 Cal. 695 [99 Pac. 196]; *Bury* v. *Young,* 98 Cal. 446 [33 Pac. 338, 35 Am. St. Rep. 186] ; *Ord* v. *Ord,* 99 Cal. 523 [34 Pac. 83] ; *Williams* v. *Kidd,* 170 Cal. 631 [151 Pac. 1, Ann. Cas. 1916E, 703].)

Under the facts of this case the presumption of identity and respondents' authorities in support of their theory with reference thereto, have no application, as the uncontroverted facts dispel the presumption. The finding that the trust deed was forged was clearly erroneous.

Harband, for the purpose of taking title and dealing with appellants in securing a loan, assumed the name "Henry Schwartz". The rule is laid down in 19 Cal. Jur. 526, as follows: "If an owner of property convey by any name, the conveyance as between himself and his grantee is valid and transfers the title. And if one chooses to take the title to real estate in a name other than his true name, so far as that property is concerned he has assumed the name in which he takes title as his true name, and in suits affecting the property he may be sued by such designation." (*Emory* v. *Kipp,* 154 Cal. 83 [97 Pac. 17, 129 Am. St. Rep. 141, 16 Ann. Cas. 792, 19 L. R. A. (N. S.) 983]; *Wilson* v. *White,* 84 Cal. 239 [24 Pac. 114]; *Fallon* v. *Kehoe,* 38 Cal. 44 [99 Am. Dec. 347] ; *Knaugh* v. *Baender,* 84 Cal. App. 142 [257 Pac. 606].)

One other question requires attention. Respondents claim that neither the record of the deed from themselves to Harband in the name "Henry Schwartz", nor the trust deed to appellant, Mortgage Guarantee Company, impart notice, for the reason that Harband, the grantee in the former deed, and the grantor in the trust deed, took the acknowledgments as notary public. There is no question as to the general rule that a party to the instrument is disqualified to take the acknowledgments. This rule is established by the authorities, such as the case of *Lee* v. *Murphy,* 119 Cal. 364, 368 [51 Pac. 549], cited by respondents, but when the only effect of the acknowledgment is to impart

notice, as in the instant case, the disqualification must appear on the face of the instrument. This exception to the general rule is recognized in *Lee* v. *Murphy, supra,* and in *Merced Bank* v. *Rosenthal,* 99 Cal. 39 [31 Pac. 849, 33 Pac. 732] ; 1 Cor. Jur. 803.

For the reasons herein stated, the judgment should be reversed, and it is so ordered.

Thompson, J., and Plummer, Acting P. J., concurred.