## GEORGE ROEHRICH v. HOLT MOTOR COMPANY AND ANOTHER.[1]

January 14, 1938.

No. 31,376.

*Thomas H. Quinn,* for appellant.
*Orr, Stark & Kidder,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff prevailed in his action to recover damages under the death by wrongful act statute. Defendant Holt Motor Company moved in the alternative for judgment notwithstanding or, if that be denied, for a new trial. The court granted the motion for judgment, and plaintiff appeals.

The facts are not in substantial dispute and may be summarized thus: Defendant Kenneth Tapp was a 19-year old boy at the time the accident giving rise to this cause occurred. His parents had

[1]Reported in 277 N. W. 274.

been divorced some ten years prior thereto, each later having remarried another. The mother lived at Austin, the father at Faribault, where he was engaged as a WPA worker. During most of these ten years Kenneth had lived with his mother but on occasions visited his father. He was wholly without money or means of any kind. His behavior evidently had been none too good, as it appears that he had spent some time in the Red Wing Training School. On January 13, 1936, he "hitchhiked" from Austin to Faribault intending to visit his father. Arriving there about two o'clock in the afternoon, he conceived the scheme of getting some free rides by going to the Ford dealer there, giving a fictitious name, and representing himself to be a prospective buyer of an automobile. He was taken out by a driver for that company and shown the benefits and advantages of the Ford car. Of course nothing came of it in the way of any purchase. Next he went to the salesrooms of defendant motor company, a dealer in Plymouth cars. There he told this story: That his name was Kenneth Munns, that his mother had recently died and that he had inherited a considerable sum of money and a farm; that he was living on a large farm belonging to his father near Owatonna; that he was in the market for a car and had some $3,000 in the Faribault State Bank; that his father at the time was staying at the Faribault hotel "doctoring with some new doctor." He claimed to have attended the University of Minnesota; that the Ford dealer had taken his father to Northfield that day in a demonstration car; and that his father was well acquainted with that dealer. He expressed a particular liking for a certain Plymouth car which had been demonstrated to him by defendant motor company's sales agent that afternoon but said he wanted to have his father look it over before finally making up his mind about buying it; that his intention was to close the deal that night so that he and his father might go to their home. His identity and the many representations of wealth were wholly false. He never had anything in the way of money or property, nor did his father. Neither was in fact able to buy anything having the semblance of a car. He was putting on a bold front to get the kind of thrill that goes with a wayward boy's daydreams.

Shortly prior to seven o'clock on the evening of that day Tapp told defendant motor company's sales agent that he was going to the Faribault hotel and that he intended to eat his evening meal at the Boston cafe. The location of the cafe and the hotel is some four or five blocks south of the place where defendant motor company's salesroom was conducted and on the same street. The purpose of his taking the car there was to see his father, have his supper, and then come back to the salesroom within half an hour. He said he would then bring his father back so that a deal might be closed, provided the father was favorably impressed. Pursuant to this arrangement, the car was given into his hands for the purpose indicated. His father was not at the hotel, and Kenneth never intended to go there or to see his father. Instead he invited "three kids" to go with him on a pleasure jaunt. To avoid the street upon which defendant company's salesroom was located, he "cut over," "cut around," or "ducked over" a few blocks to avoid being seen. He told his companions that he did not want to be seen because "his boss, Mr. Burtonhoff, was down there and he wanted to keep away from there because he was supposed to have his car back in half an hour." Needless to say, the ride taken was a long and devious one, far beyond the course and purpose for which the car was intrusted to him. He kept going on his wild ride nearly three hours. In the meantime, defendant motor company's sales agent became concerned about what had happened to his employer's car. He telephoned the sheriff of Steele county to ascertain whether he knew anyone by the name of Munns and was informed that he did not. He telephoned the sheriff of Rice county requesting him to be on the lookout for this car and that if he saw it to notify the Holt company office at once. A salesman was sent to the Boston cafe, but no trace of Munns could be found. The chief of police of Faribault was informed about it and was requested to keep his eyes open for this car and the boy who was driving it. The police chief suggested that the matter could be broadcast over the state police broadcasting system. The agent, however, thought this might be dangerous as it might lead to legal entanglement and consequent

liability if Kenneth were arrested as a thief. Shortly before ten o'clock that night he came back driving the car but said nothing about any accident having happened. He told the company's agent that he had taken the car out with his father to demonstrate it to him; that his father was agreeable to a deal being made; and that both would be around the next morning to close the transaction. The car was to be serviced and ready for early delivery the next morning.

While on this joy ride Kenneth drove the car in such fashion as to come into contact with plaintiff's intestate, causing injuries from which death followed shortly thereafter. This cause has for its only foundation the liability created by virtue of L. 1933, c. 351, § 4, 3 Mason Minn. St. 1934 Supp. § 2720-104.

From what has been said it must be plain that Kenneth did not accept or use the car for any such purpose as was within the scope of the consent given by the motor company. He did not intend to drive up to the hotel to get his father, nor to show the car to him. He had no intention of seeing his father at all, much less of taking him to defendant's place of business as a prospective purchaser. His sole objective was to engage in a joy ride with a bunch of gay youngsters. As a matter of fact, Kenneth was a converter of the car from the moment he entered it. The fraud perpetrated by him vitiated the alleged assent itself. There was no meeting of minds under the circumstances. How, then, could there be *consent?* If he had gone through with a sale of the car to another, could the purchaser claim title thereto superior to that of the motor company? "The wrongful taking of possession of personal property, either by force or fraud, generally amounts to a conversion." 26 R. C. L. p. 1110, § 20. See also Holland v. Bishop, 60 Minn. 23, 61 N. W. 681; Moody v. Blake, 117 Mass. 23, 19 Am. R. 394; 95 A. L. R. 615, annotation on "Transfer of possession of personal property with owner's consent, obtained by fraud, as conversion."

Certainly no one will contend that he whose property has been stolen or converted is liable in damages to one who suffers harm by reason of the thief's or converter's negligent use of the property so obtained. So, too, it must be apparent here, where liability of

the owner is dependent under the statute upon his "consent" being given to the user, that essential element being absent, that there can be no liability on the owner's part.

What has been said disposes of the case, and we deem unnecessary a discussion of such cases as Ewer v. Coppe, 199 Minn. 78, 271 N. W. 101; Abbey v. Northern States Power Co. 199 Minn. 41, 271 N. W. 122, and Patterson-Stocking, Inc. v. Dunn Bros. Storage Warehouses, Inc. 201 Minn. 308, 276 N. W. 737. It may well be remarked, however, that these cases seem abundantly adequate to dispose of plaintiff's appeal adversely to his contentions.

Affirmed.