[S. F. No. 16912. In Bank. Sept. 27, 1943.]

FRANK W. HOBBS, Respondent, v. TRANSPORT MOTOR COMPANY, Appellant.

HELEN LEE HOBBS, Respondent, v. TRANSPORT MOTOR COMPANY, Appellant.

CLARA HENRICS, Respondent, v. TRANSPORT MOTOR COMPANY, Appellant.

Appelbaum & Mitchell and John Jewett Earle for Appellant.

Arthur Joel and Robert L. Dreyfus for Respondents.

SHENK, J.—The plaintiffs brought separate actions against the owner and driver of a borrowed car for damages resulting from injuries sustained when the borrowed car collided with the car in which the plaintiffs were riding. The actions were consolidated for trial before a jury. In the action by Frank W. Hobbs, the jury returned a verdict against the driver in the sum of $10,000 and against the owner in the statutory amount of $5,000. In each of the other actions the verdict was for $1,000 against both defendants. The owner, Transport Motor Company, appealed from the judgments on the several verdicts.

The negligence of the defendant driver was conceded at the trial, and there is no contention that the damages awarded by the jury are excessive. The principal question is whether the record sustains the implied finding of the jury that the car was being used or operated with the permission, express or implied, of the owner. Section 402 of the California Vehicle Code provides: "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or prop-

erty resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner. . . .''

The evidence was conflicting. The facts which tend to support the verdicts are the following:

The defendant, Transport Motor Company, was engaged in the business of selling automobiles in the city of Oakland. About 5:30 o'clock on the evening of January 2, 1941, the defendant Rodrigues, a youth of twenty years, entered the company's salesrooms and expressed interest in the purchase of a Ford car. He selected a 1940 used Ford, settled on a price of $700, and inquired as to its performance. The salesman invited him to take it out and try it. Rodrigues said he didn't have time before dinner and the salesman suggested he try it after dinner. He returned at 7 o'clock. The salesmen moved several other cars to permit passageway for the 1940 Ford. Rodrigues got into the car and sat next to the salesman who was at the wheel. He was acting in the belief that prospective customers were not permitted to take out a car alone and that the salesman intended to accompany him. But the salesman turned the car over to Rodrigues with the caution, ''We close at 9 o'clock.'' Rodrigues owned a 1939 Ford which had not been performing satisfactorily because the motor was ''missing'' at high speed. He testified that he intended to buy the 1940 car if the motor of his car could not be adjusted. When he left the salesroom floor, he drove the company's Ford to a place where he had left his own car with two companions in it. Both cars were then driven to a service station. Rodrigues had repaired or replaced the ignition system in his car. One of his companions suggested that perhaps the fault was with the battery. Rodrigues removed the battery from the company's car and placed it on the floor of the service station a few feet from his own car, and the battery from his car was put in the company's car. The Rodrigues car was left at the station with the company's battery on the floor near it, and, with the Rodrigues battery in the company's car, Rodrigues and his companions drove the company's car away from the station. It was during that ride, and while crossing an arterial intersection at high speed without making the required stop, that the collision with the plaintiffs' car occurred.

The appellant contends that Rodrigues' real purpose

was to obtain the company's battery and replace it with his own; that such an intent amounted to fraud which vitiated the permission and rendered his possession of the company's car wrongful from the beginning. Reliance is placed on the case of *Roehrich* v. *Holt Motor Co.*, 201 Minn. 586 [277 N.W. 274] where a youth obtained the possession of a car by falsely representing his name, his residence, his financial circumstances; and his real purpose to go with his companions on a wild pleasure jaunt. It was held that the youth was a converter of the car from the moment he entered it; that the fraud foreclosed the inception of a valid permission for the reason that there had been no meeting of the minds under the circumstances. Assuming that a similar rule would be applicable in like circumstances under our Vehicle Code, it is enough to say that there are no such circumstances in this case. The representations of the youth in the Minnesota case were concededly false. In the present case the falsity of Rodrigues' representations was not necessarily proved. The question of the honesty of Rodrigues' motive and intent was hotly contested on the trial. The question was left with the jury to decide. The jury had the right to believe in accord with its implied finding that Rodrigues' intent was honest.

The same answer applies to the contention that Rodrigues was guilty of a violation of section 504 of the Vehicle Code, and that such violation rendered ineffective the owner's consent as a matter of law. That section makes it a criminal offense wilfully to injure or tamper with any vehicle or break or remove any part therefrom without the consent of the owner. Whether Rodrigues was guilty of a violation of that section was not an issue nor a question for determination in this case. Assuming that a fraudulent intent would have had the effect claimed by the appellant of invalidating the owner's permission, the removal of the battery had no significance under the issues in this case in the absence, as here, of a finding of such a fraudulent intent. The evidence was sufficient to support the implied finding of the absence of fraud or dishonesty and that the permission was therefore given which would impose liability on the owner under the imputed negligence rule of section 402.

The history leading to the enactment of section 402 is well stated in *Bayless* v. *Mull*, 50 Cal.App.2d 66, pp. 69 et seq. [122 P.2d 608]. That background and the plain, unambiguous language of the section indicate that the Legislature in-

tended to hold an owner of a car liable for the damages or injury caused by the negligence of anyone who had permission to use or operate the car, whether that permission was "express or implied." Beyond the use of that phrase, and as pointed out in the Bayless case, the Legislature did not formulate a specific test for ascertaining what constitutes permission; at least it made no exceptions. If permission be granted—whether express or implied—for the use or operation of the car, the liability attaches. In some instances, such as in *Henrietta* v. *Evans,* 10 Cal.2d 526 [75 P.2d 1051], the courts have held that a car in the hands of a borrower was not being used or operated with the owner's permission when the borrower took it to a place outside the territory to which the permission expressly related, or kept it longer than the time for which its use was expressly granted. But the appellant presents no case in which it has been declared that a violation of any restrictions on the manner of the use of the car will destroy the effect of the permission, and the expressions in the decisions of this court have been to the contrary. (See *Souza* v. *Corti, ante,* p. 454 [139 P.2d 645]; *Henrietta* v. *Evans, supra,* at p. 529.)

The appellant invokes a rule of strict construction with reliance on *Weber* v. *Pinyan,* 9 Cal.2d 226 [70 P.2d 183, 112A.L.R. 407]. There the question was whether the owner should be held liable for the wilful misconduct of the borrower. It was determined that when the Legislature used the word "negligence" in the statute it did not intend to impute to the owner the borrower's wilful misconduct. The observation—that an owner's imputed liability for negligence should not be extended to include the wilful misconduct of the borrower in the absence of an express declaration to that effect in the statute—obviously follows under any rule of construction. From what has been said in this and other cases (see *Milgate* v. *Wraith,* 19 Cal.2d 297 [121 P.2d 10]; *Souza* v. *Corti, supra; Bayless* v. *Mull, supra,* and cases cited therein; *Gammon* v. *Wales,* 115 Cal.App. 133, 138 [300 P. 988]), the present case must be deemed to be controlled by the application of the general formula contained in said section 402, namely, that the owner is liable to the limited extent for the negligence of one to whom he has given permission, express or implied, to use or operate his car. Whether permission has been given and is present at the time of the accident is usually a question of fact. It is clear that the jury could decide from all the evidence in this case that the permission

for the use of the car was not foreclosed by any conduct of Rodrigues and that it continued up to and including the time of the collision with the plaintiffs' car. We conclude that the jury's implied finding that at the time of the accident the car was being used by Rodrigues with the permission of the defendant, Transport Motor Company, is supported both in fact and in law.

■ The appellant contends that the trial court committed prejudicial error in excluding from evidence a transcribed statement of one of Rodrigues' companions made during an investigation prior to trial, a portion of which he signed and the balance of which he refused to sign. The companion was called as a witness by the appellant and on direct examination made statements inconsistent with a part of the transcribed statement. Counsel for appellant laid the foundation for his impeachment. He exhibited the writing to him containing the prior alleged contradictory statements, which he also read. The witness denied having made the statements. Counsel then called an impeaching witness, the investigator, who testified that Rodrigues' companion had made the prior inconsistent and contradictory statements. Counsel then offered the entire signed statement in evidence. The trial court sustained an objection to its introduction. We may assume that the introduction of the written statement, if made for the sole purpose of impeachment and not as proof of the facts therein stated, would have been proper. (See *Garrison* v. *Pearlstein*, 68 Cal.App. 326, 333 [229 P. 348]; *Overton* v. *Harband*, 6 Cal.App.2d 455, 462 [44 P.2d 484] and cases cited.) However, there was no prejudice to the appellant's rights by the court's refusal to receive the entire statement in evidence. The witness had already been discredited. (Sec. 2049, Code Civ. Proc.) On the record the ruling of the court in rejecting the entire statement may not be seriously questioned when only a portion of it was material for impeachment purposes, and the witness was otherwise discredited.

■ Counsel for Rodrigues is charged by the appellant with having used intemperate language at the trial in resisting the charge of fraud against his client and insisting that the owner also be held liable. In the course of his efforts Rodrigues' counsel indicated to the jury that his client had no property. Counsel for the owner assigned the remark as misconduct and the court admonished the jury that the extent of the property of a litigant was not a matter for considera-

tion. Rodrigues' counsel could not fairly defend the charge of negligence against his client. In fact he conceded it. He made no effort to minimize the damages. He expressly applied himself to conducting the defense on the theory that his client was not guilty of fraud and that in any event the owner was also liable. Without making any contention that the damages awarded were excessive, the appellant urges that the only proper concern of Rodrigues' counsel after conceding negligence was to minimize the damages, and that efforts beyond that constituted misconduct. Counsel for Rodrigues was justifiably concerned with freeing his client from the charge of fraud or conversion. The jury was properly admonished as to any remarks touching issues not in the case. The physical facts showed Rodrigues' negligence so obviously that an admission of negligence could not be deemed collusive. No question was so close that it may fairly be said it would have been resolved favorably to the appellant had counsel's remarks been tempered or omitted. This observation applies to other matters singled out by the appellant and assigned as misconduct on the part of counsel for Rodrigues. The record does not show any prejudice to the appellant's rights by reason of the alleged misconduct on the part of Rodrigues' counsel.

The appellant's final contention is that the court erred prejudicially in the refusal to give certain proffered instructions. We see no reason to question the exercise of the court's discretion in refusing to give an offered instruction that there was no legal duty on the part of the owner to inquire concerning Rodrigues' age before assenting to his use of the car. Rodrigues' age was not in issue. The appellant also requested certain instructions on the questions of fraud and conversion, and assigns as prejudicial error the court's refusal to read them to the jury. The appellant's argument assumes that the jury was not instructed on those questions and therefore that the court's refusal to give them affected the appellant's rights. The fact is that the trial court fully instructed the jury on the matter of the owner's liability if its assent was obtained by fraudulent representations, trick or device. The instructions given were fully responsive to the issues and were not unfavorable to the owner's defense.

The judgments are affirmed.

Gibson, C. J., Curtis, J., Edmonds J., Carter, J., Traynor, J., and Schauer, J., concurred.