[Civ. No. 1587. Fourth Appellate District.—December 19, 1935.]

N. H. GARRISON, Respondent, v. L. W. BOOTH et al., Appellants.

Lasher B. Gallagher for Appellants.

E. E. Morris and H. C. Ellis for Respondent.

MARKS, J.—This is an action for damages suffered by plaintiff, a pedestrian, in a collision with an automobile at the corner of Euclid Avenue and Fourth Street in the city of Ontario. Plaintiff had judgment and defendants have appealed.

Defendants present the following grounds for reversal of the judgment: (1) That the evidence shows plaintiff guilty of

contributory negligence as a matter of law; (2) that there is no evidence showing that the automobile was being driven by Robert Woods with the express or implied permission of L. W. Booth, its owner; (3) that the evidence is insufficient to support an award of damages for blood poisoning suffered by plaintiff following the accident. It will only be necessary for us to consider the evidence supporting the findings and judgment, for if there is material and competent evidence in the record supporting the findings and judgment we must disregard conflicts and affirm the judgment.

Euclid Avenue runs north and south and Fourth Street intersects it at right angles. Sidewalks are constructed along the west side of Euclid Avenue and a marked pedestrian crossing lane across Fourth Street connects the ends of these sidewalks north and south of that street.

Robert W. Woods is a minor. Frances E. Booth is his mother and L. W. Booth is his stepfather. The minor had a motor vehicle operator's license the application for which had been signed by his mother.

On the afternoon of March 28, 1932, plaintiff and Juanita Myers, now his wife, were walking south on the sidewalk on the west side of Euclid Avenue. When they reached the Fourth Street curb they paused, looked to the east and west for approaching vehicles and proceeded into the pedestrian crossing of Fourth Street. When they were about twelve feet from the curb the front of an automobile suddenly appeared before them. Plaintiff was caught, probably by the handle of the right front door, and pulled several feet west on Fourth Street. The automobile came south on Euclid Avenue and made a right turn onto Fourth Street.

Section 131½ of the California Vehicle Act, in force at the time of the accident, provided in part as follows:

"The driver of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at the end of a block, except at any point where a pedestrian tunnel or overhead crossing has been provided, . . . "

The traffic at the intersection in question was not controlled by signals or police officers and no pedestrian tunnel or overhead crossing had been provided.

The question of contributory negligence on the part of a plaintiff is usually one for the trier of fact. (*White* v.

*Davis,* 103 Cal. App. 531 [284 Pac. 1086].) The existence or lack of contributory negligence must be determined from all the facts of the case, one of which may be knowledge of a law imposing a regulation upon an automobile driver for the protection of the pedestrian at the scene of the accident. When such a law exists, the question of whether a plaintiff took due precaution for his own safety is usually a question of fact for the trial judge and not one of law for the appellate court. (*Mann* v. *Scott,* 180 Cal. 550 [182 Pac. 281].)

■ Independent of the statute, the question of contributory negligence was one for the trial judge sitting without a jury. Plaintiff and his wife testified that when the front of the automobile appeared before them it was less than one pace away. It was making a right turn at about fifteen miles an hour and the rear of the car was traveling on an arc nearer plaintiff than its front. At fifteen miles an hour it would have taken but a fraction of a second for the few feet of the car between its front and the handle of its front door to pass plaintiff. Whether plaintiff should or even could have stopped or otherwise avoided the collision was a question of fact for the trial judge. His decision upon this question is final and cannot be disturbed by us.

■ Booth testified that he purchased the automobile in question with his separate funds; that his wife had as much right to use the car as he had; that on the day of the accident he drove the car to his house and left it at the curb in front of his residence. Mrs. Booth testified that the automobile was used in her husband's business and for the pleasure of the family. Robert had previously driven the automobile with his mother or stepfather in it and also alone. On the day of the accident he asked his mother's permission to drive the car. She did not object and knew he was using it. There is no showing that Booth actually knew that Robert drove the car on the trip in question. Robert had driven the car on other occasions with permission from his mother. There is no showing that Booth ever objected to Robert's use of the automobile without his actual knowledge or express consent. Robert was a member of the Booth family for whose use the car was kept. He had driven it on prior occasions with the express or implied consent of Booth. Under these circumstances the trial judge was justified in drawing the conclusion

that at the time of the accident Robert was using the automobile with the implied consent of Booth.

Defendants rely on the cases of *Bradford* v. *Sargent,* 135 Cal. App. 324 [27 Pac. (2d) 93], and *Howland* v. *Doyle,* 6 Cal. App. (2d) 311 [44 Pac. (2d) 453], as supporting the contention that the evidence does not show an implied consent by Booth to the use of the automobile by Robert. In the Bradford case the son had been forbidden the use of the family car by both his parents. He had not driven it for some time. During their absence and without their knowledge or consent he took the car and drove it on the ride during which the accident happened. In the Howland case the owner of a truck placed it in the possession of one Fifield for the purpose of demonstration in hopes of a sale. Fifield permitted one Doyle to drive it without the knowledge or consent of the owner. The accident happened while Doyle was driving the truck. With these facts in mind the instant case is easily distinguishable from the cited cases. Both cases recognize the true rule governing the question of implied consent to be as follows:

"The existence of such permission can not be left to speculation or conjecture nor be assumed, but must be affirmatively proved as an essential element of the cause of action. Such proof must consist of facts and circumstances from which can follow the inference that the owner either expressly gave permission or that his acts and conduct were such that permission might be implied." (*Howland* v. *Doyle, supra.*)

When we apply this rule to the facts of the instant case we find that it supports the conclusion of the trial court that Booth gave his implied consent to Robert's use of the car in failing to object to such use on occasions preceding the accident and by silence tacitly approving the acts of Mrs. Booth in giving Robert permission to drive it.

█ The final contention of defendants that the evidence is insufficient to support an award of damages for blood poisoning following the accident is without merit. The evidence shows that plaintiff received a slight abrasion on his leg during the accident. He treated this wound with mercurochrome immediately after the accident. This treatment was repeated several times. Four days after the accident he felt sick and commenced to have fever. He immediately went to a physician who found the wound infected. From that time plaintiff continued under the care of a physician.

The rule governing care of injuries by a plaintiff requires that he act in good faith and exercise ordinary care and diligence in treating his wounds. (*Marshall* v. *Ransome Concrete Co.*, 33 Cal. App. 782 [166 Pac. 846] ; *Hamelin* v. *Foulkes,* 105 Cal. App. 458 [287 Pac. 526] ; *Allred* v. *Orth,* 206 Cal. 494 [274 Pac. 955] ; *Benjamin* v. *Noonan,* 207 Cal. 279 [277 Pac. 1045].) The abrasion on plaintiff's leg was slight and there was nothing about it to indicate the necessity for immediate treatment by a physician. The application of mercurochrome was a usual and proper home remedy according to the evidence of plaintiff's physician. As soon as plaintiff realized the serious nature of his injury he secured professional treatment. There is nothing to indicate that he acted in bad faith or failed to exercise ordinary care or diligence in the treatment of his injury.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.