[Civ. No. 14635.   First Dist., Div. One.   Apr. 20, 1951.]

STANLEY L. MUCCI, Respondent, v. A. F. WINTER, Appellant.

Dana, Bledsoe & Smith for Appellant.

Palmquist & Sugden, J. Adrian Palmquist and Stanley C. Smallwood for Respondent.

BRAY, J.—Plaintiff was injured and his car damaged when struck by an automobile owned by defendant Winter and being driven by one Williams.* A jury returned a verdict of $6,000 in favor of plaintiff. Defendant appealed, claiming (1) that the evidence was insufficient to prove that he had given Williams permission, either express or implied, to drive the car; and (2) that one of the instructions was erroneous.

## FACTS

As to most of the facts there is no conflict. The main conflict is in the inferences to be drawn from those facts. Defendant denied knowing Williams, ever having him in his car, ever allowing any person to drive his car. He also denied that any sailor ever took his car except the single unauthorized taking by Williams the night of the accident. As we are required to consider only the evidence most strongly in favor of plaintiff, we will disregard defendant's testimony and that of his witnesses.

The sole evidence upon which the claim of permissive use is based is the testimony of Williams. He was a sailor, stationed at the San Bruno naval base. About a month and a half before the accident he met defendant, about midnight, at Pal's Club, a bar in East Palo Alto. After about a half hour's drinking, Williams asked defendant to take him to the base. Defendant allowed Williams to drive his car, with defendant along, back to the base, a distance of 12 or 15 miles. About a week later Williams again met defendant. After drinking together they proceeded to San Francisco, with Williams driving defendant's car. After spending the evening there they started back to the base, Williams still driving. In San Francisco Williams saw a girl on a corner or in front of a café, got out of the car to talk to her, leaving de-

---

*Williams was joined as a defendant, but apparently not served, as no further proceedings appear against him, although his deposition was taken in Alabama. Defendant Winter will be hereinafter referred to as "defendant."

fendant in the car. Williams was afraid defendant might leave him, so without defendant's observing him, took the key out of the ignition and then off defendant's key ring and put it in his pocket, sticking another key on the same ring in the ignition. Defendant was "pretty high," and did not see Williams remove the key. In about 10 minutes Williams returned with the girl. Defendant had started the engine. At Williams' request, defendant got in the rear seat. Williams drove the girl to her home and then drove to the base. On leaving the car Williams kept the key. Apparently defendant had not discovered its loss. Defendant then drove the car away. One night Williams asked defendant to use the car for a date, but could not "get any sense out of him. He talked in my favor and said we would talk it over later." Defendant never told him not to use the car.

The third meeting was after Williams and two other sailors had taken defendant's car without defendant's knowledge while it was parked in front of a bar. They rode around in it for about an hour, and then returned to the place from which they took the car. Defendant did not know Williams had the car until they returned to the bar. Defendant was standing there, appearing angry, and made a fuss at first. He mumbled something about where Williams went and how. Defendant was pretty drunk. He got in the car with the sailors and after a while cooled off. He let Williams drive it back to the base, defendant going along. They drove around a while first. During the trip defendant mentioned something about where did Williams get the key. He grabbed it out of the switch, looked at it and then put it back. "He asked me to give it back to him but I laughed him off and made a big joke about it." "I told him he could have it after we got back." "When we got to the base I reached and took it and went on into the base." "I just told him when we left that I would see him later." Defendant did not say anything.

The fourth meeting was the night of the accident, three weeks to a month after the last meeting. The car was in front of the Pal's Club. Williams was with another sailor. Williams saw defendant either in the Pal's Club or another bar down the street, talking to some other people. Williams could not remember speaking to defendant, but waved. He thinks defendant returned the greeting. Williams did not ask defendant for the use of the car nor tell defendant that he was going to use it or where he was going. About 11:30 p. m.

he and the other sailor entered the car without defendant's knowledge and drove away, to pick up a couple of girls and then return and get defendant. Williams used the key which he had in his pocket. A short while later the accident occurred. Williams then left the key in the car and went away. He never saw defendant thereafter. It is conceded that the accident was due to Williams' negligence. Subsequently at court-martial proceedings, Williams pleaded guilty to the charge that he made unauthorized use of an automobile of another, referring to the use of defendant's automobile on this last occasion.

## SUFFICIENCY OF THE EVIDENCE

■ There was no express permission. The facts do not raise an inference of an implied permission. The fact that on the third occasion, defendant had forgiven Williams for taking the car without his consent, cannot give rise to an inference that defendant was willing that Williams do so again. The fact that on three occasions defendant permitted Williams to drive the car while defendant was riding in it certainly raises no inference that defendant was willing that Williams might take the car without his knowledge. Nor does the key episode raise an inference of consent. There is no evidence that defendant saw Williams remove the key from his ring. However, a reasonable inference could be drawn from the evidence that defendant knew at the time of the fourth episode that Williams had the key. Williams testified that on the third occasion while returning to the base, defendant asked him to return the key. Williams said he would when they got to the base, but when they arrived there Williams took the key and left, defendant saying nothing. In view of his intoxicated condition, and all of the circumstances, this cannot be said to be a consent to Williams' later taking the car while defendant had it parked in front of the bar where defendant was drinking. ■ Perhaps defendant was negligent in not insisting on a return of the key there at the base, and in not demanding the key the night of the accident when Williams waved to him in the bar. But section 402 of the Vehicle Code requires ''permission, express or implied.'' Carelessness is not enough. ■ Thus, a person who leaves a car on the street with the key in the ignition or with the ignition and car unlocked is negligent in so doing. He is presumed to know that such a condition of his car is almost an invitation to a thief to take it, and that it is liable to be taken, yet no one

would claim that when so taken, it is with the owner's permission. Here the only times the car was driven with the owner's permission was when the owner was in it. ■ Disregarding the question of whether at the time of the key episode, defendant was sober enough to realize all its implications, the strongest inference that can be drawn here is that defendant knew that Williams might again take the car without his permission, and did not take sufficient steps to prevent that contingency from happening. However, that is still a long way from granting permission for it to happen.

■ Of course, the mere fact of possession of the automobile is not sufficient to establish that its possession was with the owner's permission. (*Helmuth* v. *Frame,* 46 Cal.App.2d 381 [115 P.2d 852].) A persuasive authority here is *di Rebaylio* v. *Herndon,* 6 Cal.App.2d 567 [44 P.2d 581]. There the owner had given permission to one Herndon to use the automobile upon condition that he would return it to the garage the next morning. Herndon did not so return it because he was feeling ill. He was unable to communicate with the owner to get the permission extended. The next day, while driving the car, he had the accident. A directed verdict was upheld, the court saying, ''. . . the only permission given Herndon to use the car was that he might have it for a particularly specified period.'' (P. 569.) In our case, the only permission given Williams was on the occasions when the owner was riding with him. *Henrietta* v. *Evans,* 10 Cal.2d 526 [75 P.2d 1051], is another case of permission for a limited purpose in which it was held that from such permission no general permission may be inferred.

■ As pointed out by defendant, in determining whether there has been an implied permission, it is not necessary that the owner have prior knowledge that the driver intends to use the car (*Phipps* v. *Shacklett,* 137 Cal.App. 109 [29 P.2d 917]), but it must be ''under circumstances from which consent to use the car is necessarily implied.'' (P. 111.) In our case, there are no such circumstances.

In *Bradford* v. *Sargent,* 135 Cal.App. 324 [27 P.2d 93], a case of claimed permissive use, the court points out that the burden of proving an express or implied permission rests on the party asserting the benefit of the statute.

*Garrison* v. *Booth,* 10 Cal.App.2d 738 [52 P.2d 535], cited by defendant, is not in point. There the car was for the use of both husband and wife. The wife permitted her son to use

the car at times. On the day of the accident, the son asked her permission. She did not object and knew he was using it. While the husband did not know the car was being used by his stepson on this particular occasion, he did know of the other occasions and had made no objection thereto. It was held that the trial judge was justified in drawing the conclusion that because of the stepfather's failure to object on prior occasions and by silence tacitly approving his wife's acts in giving the stepson permission to use the car, the stepson was using the car on this occasion with the stepfather's implied consent. Obviously, there is no similarity to the situation in our case.

*Casey* v. *Fortune,* 78 Cal.App.2d 922 [179 P.2d 99], was a case in which the court held that the circumstances overcame the owner's testimony that she did not know that her son had been using the car, and justified an inference that she had knowledge of the repeated use of the car and tolerated such use. Again, a different situation from the one here.

■ Plaintiff failed to sustain the burden of proving permission, as there is no evidence from which it might reasonably be inferred that Williams had permission, either express or implied, to drive defendant's car on the night of the accident.

### INSTRUCTION

In view of our determination of the main point in the case, it becomes unnecessary to consider at length the instruction which defendant claims is erroneous. Defendant contends that while the instruction was obviously concerning negligence in the accident, it might have been construed by the jury as bearing on the question of permission. It does not bear such interpretation. There was no error in giving it.

The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied May 19, 1951, and respondent's petition for a hearing by the Supreme Court was denied June 18, 1951. Carter, J., voted for a hearing.