ITAI SATAUA, Plaintiff

v.

ESTERITA HIMPHILL, TANIELE SATIU,
and CONTINENTAL INSURANCE, Defendants

High Court of American Samoa
Trial Division

CA No. 120-86

July 28, 1987

Before KRUSE, Associate Justice, TAUANU'U,
Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Plaintiff, Charles Ala'ilima
For Defendants, Roy J.D. Hall

Plaintiff, Itai Sataua, while a pedestrian on the Fagasa highway, was struck from the rear by a vehicle and thereby suffered injury. Plaintiff sues the owner of the vehicle, the driver, and Continental Insurance Co., which insured the vehicle. Service of process was not achieved on the driver and no appearance has been made on his behalf. Trial commenced on July 15, 1987, and the hearing was continued over to July 21, 1987, owing to the unavailability of witness Dr. Tuato'o, who was involved with emergency surgery. On the latter date, Dr. Tuato'o was again unable to attend court because of his medical duties and since the area of his testimony would be concerned only with the question of damages, the parties, rather than further defer the proceedings, stipulated to bifurcate trial and submit the issue of liability to the Court.

## FACTUAL BACKGROUND

The registered owner of the vehicle is defendant Mrs. Esterita Himphill. She is also the named insured on a compulsory third party liability insurance policy issued by Continental Insurance Co., in accordance with the provisions of the Compulsory Insurance Act, A.S.C.A. 8 22.2001 et. seq.

While Mrs. Himphill was away on vacation, her husband had arranged for a certain garage in Fagasa to do body repair work to the vehicle. On an appointed day, Mr. Himphill had the vehicle picked up and taken to the garage for the requested repairs. He had also arranged for the vehicle to be returned to his home upon completion of repairs and in the meanwhile, he departed to Western Samoa for a few days.

Upon Mr. Himphill's return to the territory, he learned that the vehicle, while still in possession of the garage, was wrecked in an accident. The evidence showed that one Tanielu Satiu had taken the vehicle, in the course of which a collision arose involving the plaintiff. It was not clear whether Tanielu was an employee of the garage or not, however he lived with the garage owner and thereby managed access to the car keys. He had taken the vehicle for his own purposes and while returning to Fagasa on a Saturday evening in

-62-

an intoxicated state, he ran the car to one side of the road, striking plaintiff, and then attempted to race off again but drove to the opposite side of the highway and ran the vehicle against a breadfruit tree.

It was clear on the testimony of eyewitnesses that Tanielu, at the time, was operating the vehicle in a negligent manner, and as a proximate result of that negligence, plaintiff suffered multiple injuries. The question before us, though, is whether the vehicle owner can be held liable under the circumstances, as well as her insurance carrier, which is properly joined pursuant to the right of direct action provision of the Compulsory Insurance Act, A.S.C.A. § 22.2018.

### LIABILITY

Plaintiff urges alternative foundations for liability: firstly, on the basis of "consent" under the Compulsory Insurance Act; and secondly, on the basis of a "principal/agent" relationship between Himphill and the garage owner. On the latter alternative, plaintiff further urges the Court to be mindful of "the generally expansive interpretation of vicarious liability in Tung v. Ah Sam, 4 A.S.R. 764 (1971)."

Defendant, on the other hand, contests the existence of a "principal/agent" relationship on the reasoning that the garage owner is an "independent contractor" whose injurious acts may not be imputed to the vehicle owner. Further, defendant contends that the facts do not show the existence of "consent" necessary to sustain statutory liability.

For purposes herein, the acts of Mr. Himphill in garaging the vehicle may be attributed to Mrs. Himphill, as the registered vehicle owner, under an agency foundation. Mr. Himphill acted at all relevant times in furtherance of the vehicle owner's purpose and interest.[1]

---

[1] The vehicle was purchased by both Mr. & Mrs. Himphill for their mutual use. For practical purposes they jointly held the car, however we need not decide in this matter whether or not Mr. Himphill was an "owner" for purposes of the Compulsory Insurance Statute.

We consider plaintiff's contentions in the reverse order presented to us.

## I. Agency

As stated above, plaintiff urges consideration of an "expansive" interpretation of vicarious liability said to be exemplified in _Tung v. Ah Sam_, _supra_. The Court is unclear with this reference. In _Tung v. Ah Sam_, liability of the taxi owner and his insurer for the tortious conduct of the driver employee were founded on: the familiar common law master/servant relationship and standards imposing a high degree of care on common carriers towards the safety of their passengers; and statutory liability for the injurious conduct of a driver operating a vehicle with "express or implied" consent. We recognize "expansive" legislative treatment to accommodate the impact of the automobile on society,[2] as well as liberal construction of the Compulsory Insurance Act,[3] but

---

[2] It has been said the liability under 'automobile consent enactments' is purely the result of "legislative fiat in cases where no agency, master and servant or other relationship existed through which the negligence of the driver could be imputed to the owner." _Lind v. Eddy_, 6 N.W.2d 427, 431 (Iowa 1942). In effect an arbitrary statutory agency is created, which results in vicarious liability. _Prosser & Keeton On Torts_ § 73, p. 527 (5th ed. 1984).

[3] _Tung v. Ah Sam_, _supra_. Unrelated to statute, some Courts have enlarged on the doctrine of "negligent entrustment". (Liability here is primary and not imputed.) Notably, the Courts of Florida have categorized automobiles as "dangerous instrumentalities" for which the owner is held responsible when operated negligently by another. The "dangerous instrumentality" rule is purely policy in origin. In _Foremost Dairies v. Godman_, 26 So. 2d 773 (Fla. 1946), the Supreme Court of Florida reasoned that while an owner's entrustment may not in itself be wrongful, he is nonetheless held liable ". . . to insure his neighbor against any consequent harm not due to some cause beyond human foresight." _Id._ at 774. The rule has not been followed in other states and remains peculiar to Florida. _Prosser_, p. 524; cf.

-64-

beyond that   the precedents of this Court have gone
no further in extending vicarious liability.

The agency situation advanced   by plaintiff is
that the   vehicle repairman, Ieremia Seigafo, is an
employee of the Himphills, and therefore the latter
are   vicariously   liable   for   the wrongful acts of
"Ieremia   and   his   people."     In   answer   to   the
defendant's       position       that       Ieremia       is       an
"independent contractor," plaintiff argues that the
facts do   not establish   that Ieremia is engaged in
the   activity   of   vehicle   repairs,   and   that   no
evidence   has   been   presented   that   Ieremia has a
licensed   business   establishment,   which   would
evidence independence of control.

We are   unable to agree with plaintiff, and we
draw different conclusions from the evidence.   Mr.
Himphill testified   that the   vehicle was delivered
to a garage in Fagasa for body work,   and while the
testimony did not enlighten us one way or the other
on the repairman's background,   Ieremia is   not any
less   an   independent   contractor merely because of ,
the possibility   that   body   work   may   not   be his
regular trade   and that he may not be licensed.   In
Yearwood v. Peabody, 164 S.E. 901   (Ga. App. 1932),
a casual   repairman, who   was neither a mechanic by
trade nor   generally   engaged   in   the   business of
repairing automobiles,   was nonetheless found to be
an independent contractor.   The Court so held since
the labor   or work   involved was independent of the
vehicle owner.   See also   De   Loach   v.   Hicks, 177
S.E.   822   (Ga. App   1934). It is therefore relevant
to look for control   or absence   of control   by the
vehicle owner   as opposed   to the background of the
repairman   in   determining   their   relationship for
purposes of liability questions.

At   common   law,   it   is   recognized   that   a
garageman who has possession   of a   vehicle for the
purpose   of   repairing   it,   free from direction or

_____

Castillo v. Bickley, 363 So. 2d 792 (Fla.
1978),   where   the   court   held the "dangerous
instrumentality" rule to be   inapplicable to a
garageman   who   is   an independent contractor.
The   policy   behind   the   Florida   rule   is
"financial   responsibility,"   and the Fono has
made   such   a   policy   statement   with   the
enactment of the Compulsory Insurance Act.   We
need not therefore   consider   the desirability
of the   Florida policy.   See Foma'i v. Samana,
4 A.S.R.2d 102 (1987).

control by the owner, becomes the bailee of the vehicle as "independent contractor" and the vehicle owner therefore is not liable for injury sustained as a result of the negligent operation of the vehicle. 60A C.J.S. Motor Vehicles §§ 438, 1026 et. seq.

On the facts of the present case, there was nothing in the evidence to point to anything but an independent contractor relationship. There were no directives by Mr. Himphill to the garage to evidence control of any sort over the manner in which the repair work was to be executed. In fact, after the vehicle was turned over, Mr. Himphill went to Western Samoa for a few days, anticipating the repairs to be complete upon his return. He was merely interested in the result of the work and not how Ieremia undertook it. In these circumstances we conclude against plaintiff's agency alternative, finding a "respondeat superior" theory of liability to be inapplicable on the facts.

II. Consent

We go on then to consider whether there is statutory liability upon the basis of "express or implied consent". A.S.C.A. § 22.2003.

The facts point to consent inasmuch as Mr. Himphill had arranged for the vehicle to be picked up for repairs and then for redelivery to him, subsequent to repairs. But then can it be said of this manifestation of express consent --- the vehicle to be driven to and from the garage--- that unlimited permission therefore follows during the interim possession of the garage owner?

Plaintiff argues that it may so be said. The submission is that A.S.C.A. § 22.2003 does not distinguish between consent for a specific use on the roadway and general consent. To permit such a distinction would defeat the purposes of the statute by allowing owners the convenience of avoiding liability by imposing conditions on any grant of permission.

The argument is appealing, as it raises subjectivity on the part of defendants, and hence the statute is susceptible to being rendered nugatory. The courts have recognized that an owner cannot restrict the "manner" in which the vehicle is being operated in order to escape statutory liability. For example in Henrieta v. Evans, 75 P.2d 1051 (Cal. 1938), the Court said: ". . . if

-66-

the owner permitted the use of the car . . . though he gave specific instructions as to the manner of operation, the speed and care in' driving, etc., it would not be reasonable to hold that the use was without permission if any of these detailed instructions were violated, for in such case the liability of the owner could in almost every case be defeated by some showing of violation of authority." 75 P.2d at 1053 (citations omitted).

On the other hand, this is not to say that "consent" may not be limited. The courts have also recognized that consent, as envisioned by the automobile consent enactments, may be limited in scope as to time, place, and purpose. Union Trust Co. v. American Commercial Car Co., 189 N.W. 23 (Mich. 1922); Heavilin v. Wendell, 241 N.W. 654 (Iowa 1938); Henrieta v. Evans, supra; Krausnick v. Haegg Roofing Co., 20 N.W.2d 432 (Iowa 1945).

In the light of the above we are unable to conclude on the evidence that Tanielu's use of the vehicle for a Saturday night excursion came within the purview of Mr. Himphill's expressed consent for the vehicle to be driven to and from the garage. The evidence did not show any connection between Tanielu's driving of the vehicle and any referable purpose for which the vehicle was turned over to the garage by Mr. Himphill.

We next consider implied consent. Unlike express consent which is affirmative in character and directly given, the cases have spoken of "implied consent" under the statute with respect to the omnibus clause of a liability policy as involving "inference or circumstances arising from a course of conduct or relationship between the parties in which there is mutual acquiesence or lack of objection under circumstances signifying assent." Allstate Ins. Co. v. State Farm Mutual Automobile Ins. Co., 195 S.E.2d 711, 713 (S. Car. 1973). It "indicates a sufferance of use or a passive permission deduced from failure to object to a known past, present, or intended future use under circumstances where the use should be anticipated." Bradford v. Sargent, 27 P.2d 93, 96 (Ca. 1934).

In the present matter, the evidence showed no other relationship or course of conduct between the Himphills and Ieremia, save this instance of garaging the vehicle for body work. In such a context, the courts have found "implied consent" where the nature of the work requested is such as

-67-

to suggest or indicate to a reasonably prudent person that the car must be or will be driven to accomplish the work or repair. <u>Zuckerman v. Parton</u>, 184 N.E. 49 (N.Y. App. 1933). No such circumstances existed here. Mr. Himphill testified that the garage had no reason to test drive or otherwise use the vehicle. The repairs requested had nothing to do with mechanical work, it was for body repair and a paint job. Even if this factor could be conceded to plaintiff and the vehicle could somehow be expected to be on the roads consequent to repairs, the Court is not able, on the facts, to infer implied consent for use of the vehicle by Tanielu for reasons entirely unrelated to why the vehicle was with the garage in the first place. To do so in the name of liberal construction and expansive interpretation would take us into the realm of the imaginative, the speculative, and indeed the legislative. The statutory criterion is "consent" and that fact must appear on the evidence in order to bring the wrongful acts of a driver within the coverage of compulsory insurance policies.

Finally, plaintiff also suggests a theory of liability based on the owner's relaxed control over access to the vehicle and suggests a "duty" to keep or prevent his vehicle from improper or unauthorized use. The plaintiff alludes to <u>Minute v. Hartford Fire Insurance</u>, CA No. 3260-75 (1976), and <u>Te'o v. Continental Insurance</u>, AP No.16-84 (1985), which cases involved the factual situation of parents leaving the car keys lying around and accessible to errant children. In the <u>Minute</u> case, the Court found the absence of implied consent and the result is thus inapposite to plaintiff's position. The <u>Te'o</u> matter is factually distinguishable, as there the evidence pointed to past conduct and a relationship which gave rise to sufficient inferences of acquiescence signifying consent. That is not the case here.

The contention, however, approaches the "special circumstances" rule applied in some states. This is a variant of the "entrustment" measure and renders an owner liable, for negligently leaving keys in the car, to third persons injured by a thief who foreseeably steals the vehicle. <u>See, e.g.,</u> <u>Hoskin v. Robles</u>, 159 Cal. Rptr. 369 (1979).

The facts here do not bear out such "special circumstances" and we leave the applicability of such rule to another day.

## CONCLUSION

On the foregoing, it is the conclusion of the Court that defendants Esterita Himphill and Continental Insurance are not liable to plaintiff. As against these defendants, the matter is dismissed and accordingly, it is so ORDERED.